## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE BAPTISTE and MITCHELL MATORIN, <br><br>             Plaintiffs, <br><br> v. <br><br> COMMONWEALTH OF MASSACHUSETTS and EXECUTIVE OFFICE OF HOUSING AND ECONOMIC DEVELOPMENT, <br><br>             Defendants. | C.A. No. 1:20-CV-11335-MLW |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS, OR, IN THE ALTERNATIVE, TO STAY

Defendants Commonwealth of Massachusetts and its Executive Office of Housing and Economic Development (EOHED) (collectively, "Commonwealth"), submit this Memorandum in support of their motion to dismiss this case, in whole or in part, or, in the alternative, to stay it. As elaborated upon below, Plaintiffs Marie Baptiste and Mitchell Matorin ("Landlords") challenge both an emergency act adopted by the Massachusetts Legislature that temporarily prevents certain classes of evictions from proceeding in Massachusetts during the COVID-19 pandemic, Mass. St. 2020, c. 65 (Act), and emergency regulations promulgated by EOHED under the Act, 400 Mass. Code Regs. § 5.01, *et seq*. (2020) ("Regulations"). The Landlords' Verified Complaint (Complaint) seeks declarations under 28 U.S.C. § 2201 that the Act and/or Regulations are unconstitutional because they violate the U.S. Constitution's: (1) First Amendment right to petition (Count I); (2) First Amendment right to free speech (Counts II & III); (3) Contracts Clause (Count IV); and (4) Fifth Amendment guarantee against deprivation of property without just compensation (Count V). For the reasons that follow, however, each of these five counts must be promptly dismissed or, in the alternative, should be stayed.

## BACKGROUND

I.      **The Act**

The Act affects only "non-essential evictions," which it defines as those:

(i) for non-payment of rent; (ii) resulting from a foreclosure; (iii) for no fault or no cause; or (iv) for cause that does not involve or include allegations of: (a) criminal activity that may impact the health or safety of other residents, healthcare workers, emergency personnel, persons lawfully on the subject property or the general public; or (b) lease violations that may impact the health or safety of other residents, health care workers, emergency personnel, persons lawfully on the subject property or the general public . . . "

Mass. St. 2020, c. 65, § 1.  Where an eviction is "non-essential" and concerns a residential premises, the Act temporarily prohibits a State court with jurisdiction over cases brought under the State's summary process statute, G.L. c. 239, from accepting a summons and complaint, entering judgment, issuing an execution, denying a stay of execution or continuance, or scheduling an event, such as a trial.  Mass. St. 2020, c. 65, § 3(b).  Additionally, for purposes of non-essential *residential* evictions, the Act bars landlords from: (1) terminating a tenancy or (2) sending any notice "requesting or demanding that a tenant of a residential unit vacate the premises."  *Id.* § 3(a).  The Act was made effective on April 20, 2020, and its eviction-related provisions originally were set to expire on the earlier of:  (1) 120 days later – on August 18, 2020; or (2) 45 days after the Massachusetts Governor lifts the State's emergency declaration. *Id.* § 7.  The Act allows for an extension of its provisions by the Governor in increments of up to 90 days, to an outer limit of 45 days after the state of emergency ends.  *Id.* § 6.  On Tuesday, July 21, 2020, Governor Baker announced that he will extend the moratorium on evictions[1] for 60 days, through 11:59 p.m. on October 17, 2020.  *See* https://www.mass.gov/doc/foreclosures-and-evictions-moratorium-extension-july-21-2020.

---

[1] The Act also provides a similar moratorium on foreclosures of residential mortgages, which the Governor also extended for 60 days.  *Id.*, § 5.

The Act *tolls* all deadlines to file a summons and complaint, appeal from a judgment, or levy on an execution, Mass. St. 2020, c. 65, §§ 3(c), 6, thereby expressly preserving landlords' right to recover possession of rented premises when the Act is no longer effective, if they are legally entitled to do so.  The Act also states plainly, "Nothing in this section shall relieve a tenant from the obligation to pay rent or restrict a landlord's ability to recover rent."  *Id.* § 3(f).

## II.    The Regulations.

EOHED promulgated regulations under the Act, which state that, "[t]hroughout the period during which these emergency regulations are in effect, every tenant shall remain obligated to pay rent on the due date if and to the extent the tenant has the means to do so."  400 Code Mass. Regs. § 5.03(1).  The Regulations further specify that landlords "should provide tenants of residential dwelling units a written notice of each missed rent payment.  If a landlord delivers such a notice, the notice must include the following statements, prominently displayed on the first page[. . . .]"  *Id.* at § 5.03(2).  The Regulations go on to list three mandatory disclosures that must be included on any notice of missed rent during the Regulations' effective period.  *Id.*  Those disclosures are summarized as:  (1) a clear statement that the notice of nonpayment is *not* a notice to quit or of eviction; (2) a statement about where, on the Internet, tenants may find resources "that may help you pay your rent";[2] and (3) a statement that tenants receiving such a notice are protected under the Act from late fees or a negative credit report upon

---

[2]      The second disclosure includes https addresses for two worldwide websites.  As those websites themselves indicate, the first is maintained by the Regional Housing Network, a statewide non-profit membership organization.  It provides a list of Housing Consumer Education Centers, which are agencies that administer the State's Residential Assistance for Families in Transition program, a program offering public funds to families at risk of becoming homeless.  The second website is maintained by Massachusetts Housing Partnership, a quasi-public body politic and corporate organized pursuant to section 35 of chapter 405 of the Acts of 1985; that site provides a list of resources for tenants concerned about being unable to pay rent because of the pandemic.

their certification that the nonpayment is due to financial impact from COVID-19, *see* Mass. St. 2020, c. 65, § 3(e);[3] 400 Code Mass. Regs. § 5.03(2).

## III.     The State Court Action.

On May 29, 2020, Mitchell Matorin – also a plaintiff in the instant case – and Linda Smith ("State Court Landlords") filed an emergency petition with the Single Justice of the Massachusetts Supreme Judicial Court (SJC) challenging the constitutionality of the Act and Regulations ("State Court Case").  The State Court Landlords are represented by the same counsel as the Landlords in the instant case.  In their petition, the State Court Landlords offered seven different theories under the U.S. Constitution and the Massachusetts Declaration of Rights as to why the Act and the Regulations must be struck down:  (1) violation of the separation of powers doctrine set forth in art. 30 of the Declaration of Rights; (2) violation of the right of access to State courts under arts. 11 and 29 of the Declaration of Rights; (3) violation of the First Amendment's Petition Clause; (4) violation of the First Amendment's Free Speech Clause insofar as the Act temporarily bans the termination of tenancies and sending of notices to quit or vacate; (5) violation of the Free Speech Clause insofar as to the Regulations require the disclosures described above in any notice of missed rent payment; (6) violation of both the Fifth Amendment's Takings Clause and art. 10 of the Declaration of Rights (unconstitutional taking); and (7) violation of the Contracts Clause set forth in the U.S. Constitution at art. 1, § 10.  Plainly, the five federal constitutional theories asserted by the State Court Landlords under the First and Fifth Amendments and the Contracts Clause are directly analogous to Counts I-V of the Landlords' Complaint filed in this Court.  For purposes of comparison, a copy of the State Court Landlords' petition filed in the Single Justice Session is attached hereto as Exhibit A.

---

[3]        The third disclosure includes an https address for a worldwide website maintained by EOHED that includes a link to a form suitable for use by tenants who wish to make this certification.

On June 24, a Single Justice of the SJC (Lowy, J.) transferred the State Court Case to Suffolk Superior Court under Mass. G.L. c. 211, § 4A, where it was docketed as *Matorin v. Commonwealth of Mass., et al.,* Docket No. 20-1334.  In between that date and July 15, 2020, when the instant action was filed, one of the State Court Landlords' attorneys made public statements about their intention to bring a federal case in response to the Single Justice's transfer order.  A *Massachusetts Real Estate Law Blog* post thus states, "[W]e are very disappointed that the SJC has declined to take up the constitutionality of the Eviction Moratorium . . . . Despite this, we are not going down without a fight. We have decided to file our federal constitutional claims in Federal Court in Boston, seeking to strike down the Moratorium. We are hopeful that the federal court will give us a fair shot."  *See* Exhibit B attached hereto.

On June 30, the State Court Landlords served a motion for a preliminary injunction (PI) under local rules, and, simultaneously, filed a motion seeking expedited briefing and proceedings on their PI motion.  After holding a virtual hearing on procedural matters on July 9, 2020, the Superior Court (Wilson, J.) issued the Order attached hereto as Exhibit C, which schedules the State Court Landlords' PI motion for hearing via Zoom on July 30, 2020 at 10:00 a.m., and which also required the Commonwealth to serve its Opposition by Monday, July 20, 2020.  *See* Ex. C at ¶¶ 1, 4.  On this past Saturday evening, July 18, 2020, the State Court Landlords' attorneys informed counsel for the Commonwealth by e-mail of their clients' intention voluntarily to dismiss their federal law claims from the State Court Case.  On Monday, July 20, 2020, the State Court Landlords filed their notice of Voluntary Dismissal of Federal Claims, a copy of which is attached hereto as Exhibit D, in the Superior Court.  The Notice states that the State Court Landlords "hereby waive and dismiss all federal claims asserted in this action, specifically including claims made under the First Amendment . . . Fifth Amendment . . . and

Contracts Clause of the United States Constitution, without prejudice, and reserving same to be asserted fully in the [instant] action . . . ."[4]  *See* Ex. D.

## **ARGUMENT**

### I.       **The Complaint Must Be Dismissed in Its Entirety in Accordance with the Eleventh Amendment and the Doctrine of Sovereign Immunity.**

The Court must dismiss this case in its entirety because the Eleventh Amendment bars Plaintiffs' claims against state government entities such as the Commonwealth and EOHED. "The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'" *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000) (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984)); *accord Brait Builders Corp. v. Massachusetts Div. of Capital Asset Mgmt.*, 644 F.3d 5, 11 (1st Cir. 2011).  The Commonwealth has not waived its Eleventh Amendment immunity in this case – a state does not waive its immunity merely by "defend[ing] itself upon being haled into federal court as a defendant against its will," *Davidson v. Howe*, 749 F.3d 21, 28 (1st Cir. 2014) (citation and internal quotation marks omitted) – and its immunity has not been abrogated by Congress.  *See Brait Builders*, 644 F.3d at 11 (where neither waiver nor abrogation had occurred, it was "perfectly clear" that claims against state agency were barred by the Eleventh Amendment).

Apart from this blanket defect, "the Eleventh Amendment [also] bars a damages action against a State in federal court," and this "bar remains in effect" regardless of whether "State

---

[4]      On that same day, the Commonwealth and EOHED served an Opposition to the PI motion addressing only the State Court Landlords' claims under the Declaration of Rights, at arts. 10 (unconstitutional taking), 11 & 29 (right of access to State courts), and 30 (separation of powers).  The State Court Landlords' reply brief is due to be served on July 24, 2020, and their "Rule 9A packet" is due to be filed on that same day.  See Ex. C at ¶2.

officials are sued for damages in their official capacity."  *Kentucky v. Graham*, 473 U.S. 159,

169 (1985).  As such, the Landlords' demand that they be awarded "'just compensation' and any

and all damages allowed by law" (Complaint, p. 21) under the federal Takings Clause cannot

survive, regardless of who the defendants are.  *See*, *e.g*., *Hutto v. South Carolina Ret. Sys.*, 773

F.3d 536, 551-52 (4th Cir. 2014) (Takings Clause case); *DLX, Inc. v. Kentucky*, 381 F.3d 511,

526-528 (6th Cir. 2004) (same).

**II.      The Landlords Also Lack Standing to Prosecute Counts II and III of the Complaint.**

Counts II and III of the Complaint also must be dismissed pursuant to Fed. R. Civ. P.

12(b)(1) for the separate and independent reason that the Landlords lack standing to assert them.

   A.      *Article III Standing Requires, in All Cases, an Injury in Fact.*

Article III of the United States Constitution restricts federal court jurisdiction to "Cases"

and "Controversies."  *Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017), quoting U.S. Const.

art. III, § 2.  This limitation is "fundamental in the federal judiciary's role within our

constitutional separation of powers."  *Id*.  "Two of the limitation's manifestations are the

justiciability doctrines of standing and ripeness, which are interrelated; each is rooted in Article

III."  *Id.*

Here, the Landlords' First Amendment claims fail due to lack of standing.  The "first and

foremost concern in standing analysis is the requirement that the plaintiff establish an injury in

fact, which helps to ensure that the plaintiff has a personal stake in the outcome of the

controversy."  *Id.* at 500 (internal quotations and citations omitted).  The injury-in-fact

requirement is a constitutional, not prudential, requirement, and thus it "appl[ies] with equal

force in every case."  *Nat'l Org. for Marriage v. McKee*, 649 F.3d 34, 46 (1st Cir. 2011); *Blum v.

Holder*, 744 F.3d 790, 796 (1ˢᵗ Cir. 2014).  To satisfy Article III, the injury "must be concrete

and particularized and actual or imminent, not conjectural or hypothetical." *Reddy*, 845 F.3d at

500 (internal quotations omitted); *Blum*, 744 F.3d at 796.  An injury "is imminent if it is certainly

impending *or* if there is a substantial risk that harm will occur." *Id.* (emphasis in original).[5]

Allegations of mere *possible* injury, in contrast, are insufficient.  *Blum*, 744 F.3d at 796.

> B.      *Count II Asserts No Injury in Fact, Because Landlords Terminated the*
> *Subject Tenancies and Sent Notices to Quit Prior to the Act's Passage.*

Count II of the Complaint seeks a declaration that the Act unconstitutionally bars

"content-based" speech by prohibiting the Landlords from either (1) terminating tenancies in the

subject premises or (2) sending "any notice, including a notice to quit, requesting or demanding

that a tenant of a residential dwelling unit vacate the premises."  *See* Complaint, ¶¶ 55-56,

quoting St. 2020 c. 65, § 3(a)(ii).  The Landlords claim that "[t]he Act's ban on the issuance of

legal notices such as a notice to quit or notice of tenancy termination is an infringement on

Plaintiffs' constitutional right to free speech."  Complaint, ¶ 56.  Their Complaint, however,

contains no allegation that either Landlord is currently facing any "certainly impending" injury

or "substantial risk" of injury, *Reddy*, 845 at 501, because they both affirmatively allege that they

had already served – before the Act went into effect – notices to quit upon their tenants.

Complaint, ¶¶ 32-33; 40.  In fact, both Landlords attach to their Affidavits, filed in support of

their pending motion for PI in this Court, the very notices that they have sent to their tenants.

Exhibit B to Plaintiff Matorin's Affidavit thus attaches a "Fourteen (14) Day Notice to

Quit" dated February 8, 2020.  Matorin Aff. at Ex. B (Docket No. 4).  It states that tenants are

entitled to cure their rental arrearage within ten days of the notice, and unless they do so, "any

sum paid by you after the date of this notice shall be accepted for use and occupancy only and

not for rent.  Furthermore . . . it shall not create or reinstate any tenancy."  *Id.*  Matorin's

---

[5]      The Landlords bear the burden of making this showing.  *Reddy*, 845 F.3d at 500.

Affidavit also attaches a summary process summons and complaint pending in the State's

Central Housing Court, which case has been stayed pursuant to the Act. *Id.* at Ex. C & D. It is

necessarily Matorin's position, therefore, that the subject tenancy was properly terminated and

all notices to quit required by law were served long before the Act went into effect on April 20,

2020. *See* Complaint at p. 20, Request No. 6 (seeking a declaration that Matorin "may proceed

with his pending summary process action"); Mass. G.L. c. 186, §§ 11, 11A, 12. Thus, nothing in

the Complaint suggests any possibility that Matorin will send any additional notice to quit to his

tenants -- or try to terminate a tenancy that he necessarily contends has already been terminated.

Plaintiff Baptiste is similarly situated with respect to serving notices, although she alleges

that she has been unable to file a summary process summons and complaint because of the Act.

Baptiste indeed has served two notices to quit on her tenants, and they are attached to her

Affidavit. *See* Baptiste Aff. at Exhibits A & B (Docket No. 3). The first, dated January 30,

2020, states, "All monies paid to the landlord after your receipt of this notice will be accepted as

*use and occupancy and not as rent* . . . without any intention of reinstating your tenancy or

establishing a new tenancy."[6]  *Id.* at Ex. A (emphasis in original). Baptiste's second notice to

quit, dated March 9, 2020, includes similar language. *See id.* at Ex. B. Since Baptiste alleges

that she wishes to commence a summary process eviction but cannot do so because of the Act,

Complaint at ¶ 34, she is necessarily asserting that any tenancy in her subject premises has been

properly terminated and all legally required notices to quit have been served.[7]

---

[6]     Notwithstanding that statement, the Notice also states the statutory cure rights for tenants at will
and by a lease where nonpayment is the reason for eviction. *See id.* at Ex. A.

[7]     Oddly, one of the Landlords' requests for relief calls into question whether Baptiste actually does
have a present right to possession of the premises she says she would like to recover. Request No. 7 in
the Landlords' requests for relief seeks a declaration that "Plaintiff Baptiste may serve any and all legal
notices to quit for non-payment against her tenants and may proceed with a summary process action under

As a result, even if notices terminating tenancies and notices to quit can be properly characterized as "expressive speech" (a proposition that the Commonwealth will vigorously oppose in its PI Opposition), "the [A]ct is not currently preventing the [Landlords] from engaging" in such speech, *Reddy*, 845 F.3d at 502, since they already *have*. Specifically, because both Landlords affirmatively allege that they wish to (and, impliedly, but for the Act, are entitled to) pursue eviction actions, there is no suggestion in the Complaint that either Landlord will have any occasion to engage in the type of so-called "speech" precluded by § 3(a) of the Act at any time in the future. Thus, the Landlords not only fail to allege an actual injury in Count II – they fail even to allege a hypothetical injury. As in *Reddy*, the Landlords have not alleged "that the Act has meaningfully altered their expressive activities, nor that it has objectively chilled their exercise of First Amendment rights." *Reddy*, 845 F.3d at 496. They therefore "lack standing, at this time and on this record," to challenge the Act in Count II. *Id.* at 501.

   C.  *Count III Also Asserts No Injury in Fact, Because the Landlords Have Not Alleged Any Intent to Send Notices of Missed 'Rent' Payments to Their Tenants.*

Count III of the Complaint is equally infirm. There, the Landlords claim that the Regulations include an impermissible content-based regulation of speech insofar as they "compel[] individuals to speak a particular message" in the form of the disclosures described above. *See* Complaint at ¶ 62, quoting *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018). They argue that, "[w]ith all non-payment notices to quit prohibited, the

---

G.L. c. 239, *if necessary and legally justified*." Complaint at 21 (emphasis supplied). The Complaint does not explain, however, why Baptiste may need to serve any other notices on her tenants before proceeding with summary process once the moratorium is lifted, nor does it explain why she equivocates about whether eviction would be legally justified. Baptiste's suggestion that she may not be presently entitled to a judgment for possession in a summary process action calls into question her standing to bring Counts I, IV, and V in addition to Counts II and III.

[Regulations] mandate a government approved notice and language for any rental property owner who opts to send a 'missed rental notice' to a tenant."  Complaint, ¶ 61.

There is, however, a glaring omission in the Complaint.  Neither Landlord alleges in any way that they are required to, intend to, or desire to send any "missed rental notice" to their tenants.  Indeed, paragraph 62 of the Complaint refers to landlords who "opt" to send a "missed rental notice," suggesting that Landlords' view of the Regulations is that sending such notices is a choice, not a requirement.  Moreover, any suggestion that these Landlords, in particular, would send such notices makes no sense, since they claim to have terminated the subject tenancies and to be willing only to accept "use and occupancy," and not "rent," from their tenants going forward.  *See Davis v. Comerford, et al.,* 483 Mass. 164, 169-70 (2019) (distinguishing "rent" and "use and occupancy" payments).  Accordingly, it is plain that the Landlords also lack standing to pursue Count III of the Complaint.  *Reddy*, 845 F.3d at 501.[8]

---

[8]     Separately, Count V of the Complaint, asserting that the Act amounts to an unconstitutional taking, should be dismissed at least as to Matorin for the additional independent reason that it is the same claim he has already asserted in State court in a pending action.  To date, the SJC has "interpreted art. 10 consistently to provide property owners the same protection afforded under the just compensation clause of the Fifth Amendment."  *Blair v. Department of Conservation & Recreation*, 457 Mass. 634, 642 (2010).  Accordingly, there is no substantive distinction between Matorin's State court takings claim and his federal takings claim – the two are coextensive.  Generally, "a court may stay or dismiss a later-filed action under the [prior-pending-action] doctrine if two conditions are met: (1) there exists an identity of issues between the two actions and (2) the controlling issues in the later-filed action will be determined in the earlier-filed action."  *See Bradeen v. The Bank of N.Y. Mellon Trust Co., N.A.*, 2018 WL 5792319, at *2 (D. Mass. 2018) (Saylor, J.).  Here, as regards both factors, effectively the same takings issues would be resolved in both suits, given the co-extensiveness of the two legal standards.  Thus, Matorin's Count V should be dismissed without prejudice for reasons separate and apart from the Eleventh Amendment.  *See id.* at **1-3 (citing the "prior-pending-action" doctrine as basis for dismissal without prejudice and noting the doctrine "arises out of concerns about judicial efficiency and avoiding inconsistent judgments"); *see also Faith v. Truman Capital Advisors, LP*, 2020 WL 263534, at **4-5 (D. Mass. 2020) (Casper, J.) (staying case on grounds of both abstention and prior-pending-action doctrines); *Quality One Wireless LLC v. Goldie Grp.*, LLC 37 F. Supp. 3d 536, 540-44 (D. Mass. 2014) (Saylor, J.) (applying prior-pending-action doctrine to stay case).

### III.   All Claims Should Otherwise Be Dismissed or Stayed on Abstention Grounds

   A.   _Wilton Abstention Applies Here._

In an action under the federal Declaratory Judgment Act, 28 U.S.C. § 2201, it is within

the district court's "unique and substantial discretion" to dismiss or stay, even though the

complaint otherwise satisfies jurisdictional requirements.[9]  _Wilton v. Seven Falls Co._, 515 U.S.

277, 286(1995) ("Declaratory Judgment Act . . . created an opportunity, rather than a duty, to

grant a new form of relief to qualifying litigants"); _Brillhart v. Excess Ins. Co. of Am._, 316 U.S.

491, 495 (1942).  This "broad discretion" to refrain from deciding declaratory judgment claims is

ultimately informed by "considerations of practicality and wise judicial administration."[10]  _Mass._

---

[9]     This is a declaratory judgment case notwithstanding that Count V also includes a claim for
monetary compensation, since that claim is barred by the Eleventh Amendment and need not be
considered.  _See_ Section I _supra_.  Likewise, the fact that Landlords include a demand for an "injunction"
in their prayers for relief does not change the nature of the underlying claims.  _See El Dia, Inc. v.
Hernandez Colon_, 963 F.2d 488, 491 (1st Cir. 1992) (court considers abstention under the Declaratory
Judgment Act standard even though plaintiffs sought to "declare [executive order] unconstitutional _and
enjoin its enforcement_") (emphasis added).  Indeed, the Declaratory Judgment Act itself contains a
provision, 28 U.S.C. § 2202, that allows a court to enter any "[f]urther necessary or proper relief based on
a declaratory judgment or decree," which would include injunctive relief.  _See, e.g., Greater Fremont,
Inc. v. City of Fremont_, 302 F. Supp. 652, 656 (N.D. Ohio 1968).  As such, the mere fact that Plaintiffs
have included an injunction as part of the requested relief under their five Declaratory Judgment Act
claims does not prevent application of the _Wilton_ standard.  _See Royal Indemnity Co. v. Apex Oil Co._, 511
F.3d 788, 793-94 (8th Cir. 2008).

[10]     If the Court were instead to conclude that this case presents a "mix" of declaratory and non-
declaratory claims, _but see_ fn. 9 _supra_, the law governing such hybrid situations would still favor
application of _Wilton_ rather than the abstention standard stated in _Colorado River Water Conserv. Dist. v.
United States,_ 424 U.S. 800 (1976), discussed _infra_, pp. 16-20.  While there is currently a circuit split as
to which standard should apply in actions where a plaintiff clearly pleads both declaratory claims and
claims seeking injunctive and/or monetary relief (_i.e._, "coercive" claims), the First Circuit has appeared to
"approve of, if not mandate" a "surgical" method of dissecting complaints to apply abstention concepts.
_Rossi v. Gemma_, 489 F.3d 26 (1st Cir. 2007); _see Mass Biologic Labs of the Univ. of Mass. v.
Medimmune LLC_, 871 F. Supp. 2d 29, 35 (D. Mass. 2012); _Certain London Mkt. Co. Reinsur. v. Lamorak
Ins. Co.,_ 2019 WL 1222758, at *9 (D. Mass. 2019).  This approach "consists of applying _Colorado River_
to the coercive claims and _Wilton/Brillhart_ to the declaratory claims."  _London Market_, 2019 WL
1222758 at *9.  Here, however, there are no _freestanding_ coercive claims; there are only claims brought
under the Declaratory Judgment Act, 28 U.S.C. at §§ 2201 & 2202.  _See_ fn. 9 _supra_.  Accordingly,
_Wilton_ applies across the board to the instant Complaint.

*Biologic Labs*, 871 F. Supp. 2d at 33, *quoting Wilton*, 515 U.S. at 288.  District courts consider

the following non-exhaustive list of factors when deciding whether to abstain under *Wilton*:  (1)

the scope of the pending state court proceeding and the nature of defenses open there; (2)

whether the claims of all parties in interest can be adjudicated satisfactorily in the state

proceeding; (3) whether necessary parties have been joined; (4) whether all necessary parties are

amenable to process in the state proceeding; and (5) "the virtue of avoiding uneconomical

proceedings, vexatious proceedings, and gratuitous interference by a federal court with an

orderly and comprehensive suit pending in a state court, presenting the same issues, not governed

by federal law, between the same parties."  *London Mkt. Co.,* 2019 WL 1222758 at *5.

　　　　While these factors provide a "framework" for considering the question of abstention,

"they should not be used as a 'mechanical checklist,' but rather must be carefully balanced as

they apply in a given case."  *Standard Fire Ins. Co. v. Gordon*, 376 F. Supp. 2d 218, 225 (D.R.I.

2005).  "A court in deciding whether to exercise its broad discretion [under *Wilton*] . . . should

compare the nexus between the two suits, considering the totality of the circumstances."

*Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D.Mass.2004).  Here, if the State Court Landlords

were to prevail there and obtain an injunction against the Act's enforcement, there would be no

need for this Court to entertain any of the claims now before it.  In such instances, the First

Circuit has "sound[ed] a note of caution," as "the discretion to grant declaratory relief is to be

exercised with great circumspection when matters of public moment are involved, . . . or when a

request for relief threatens to drag a federal court prematurely into constitutional issues that are

freighted with uncertainty."  *Ernst & Young v. Depositors Econ. Prot. Corp.*, 45 F.3d 530, 535

(1st Cir. 1995); *see El Dia, Inc. v. Hernandez Colon*, 963 F.2d 488, 494 (1st Cir. 1992) (urging

caution in providing declaratory relief in constitutional cases because "[u]ncertain questions of

constitutional law should be addressed *only when absolutely necessary*").[11]  Moreover, proceeding here while the State Court Action is pending could easily result in inconsistent results, particularly with regard to the "takings" claims asserted in both actions, which are governed by the same constitutional standards.  *See Essex Ins. Co. v. Gilbert Enter. Inc.*, 2013 WL 5347435, *5 (D.R.I. 2013) (*Wilton* abstention designed to avoid "piecemeal litigation, duplication of effort and the possibility of inconsistent results.").

     While the Commonwealth submits that these two points alone present sufficient grounds for the Court to abstain, consideration of the individual *Wilton* factors also counsels in favor of abstention.  With respect to first of them ("the scope of the pending state court proceeding and the nature of defenses open there," 515 U.S. at 283), the State Court Action encompassed *all* of the claims filed in this case at the time it was filed.  *See* <u>Ex. A</u> hereto.  Indeed, at that point in time, the State Court Action "[was] more comprehensive than the federal court action," *National*

---

[11]     The first-impression nature of the Landlords' challenges to the Act's moratorium under several provisions of the Massachusetts Constitution also supports the Court invoking so-called *Pullman* abstention.  Under that doctrine, "when a federal constitutional claim is premised on an unsettled question of state law, the federal court should stay its hand in order to provide the state courts an opportunity to settle the underlying state law question and thus avoid the possibility of unnecessarily deciding a constitutional question."  *Harris Cty. Com'rs Ct. v. Moore*, 420 U.S. 77, 83 (1975).  Although the "unsettled question of state law" most often concerns ambiguities in a state statute's actual text, "[t]he same considerations apply where . . . the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute."  *Id.* at 84-85.  Here the State Court Plaintiffs' Superior Court claims under art. 30 (separation of powers) and arts. 11 and 29 (right to access the courts) of the Massachusetts Constitution present first-impression issues for a moratorium like the Act (in contrast, state constitutional provisions that are simply cognate analogues to federal ones, such as art. 10's takings provisions, are less suitable candidates for *Pullman*).  *See, e.g.*, *Ibarra v. Bexar Cty. Hosp. Dist.*, 624 F.2d 44, 45-46 (5th Cir. 1980) (abstention appropriate for federal constitutional challenge to state hospital district policy where separate issue existed for it under Texas Constitution); *see also Pustell v. Lynn Pub. Schls.*, 18 F.3d 50, 54 (1st Cir. 1994) (same where issue existed whether local regulation complied with state statutory law).  While the Commonwealth maintains in Superior Court that the reasoning in analogous Massachusetts case law squarely precludes the arts. 11, 29, and 30 claims, the State Court Plaintiffs certainly will be contesting that view.  In the least, this case's *Pullman* aspects provide a further reason why the Court should exercise the discretion under the Declaratory Judgment Act to decline to hear Plaintiffs' claims at the present time.  *See Casiano-Montanez v. St. Ins. Fund Corp.*, 707 F.3d 124, 128 (1st Cir. 2013) ("[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases").

*Union Fire Ins. Co. of Pitt. v. Marley-Wylain Co.,* 2014 WL 12797591, * 4 (D. Mass. 2014) -- a

factor that militates in favor of abstention.  *See also OHI Asset (CT) Lender, LLC v. Woodland*

*Manor*, 687 F. Supp. 2d 12, 22-23 (D.R.I. 2010) (relevant date for comparing state and federal

cases under *Wilton* is date federal action was filed); *infra*, p. 19.  Moreover, even if one were to

consider only the currently surviving claims in the State Court Action, there is still substantial

overlap between the two cases.  As discussed above (fn. 8, *supra*), the State Court Plaintiffs'

takings challenge is functionally identical to the one brought here.  But more fundamentally, in

both cases, the plaintiffs ultimately seek the same relief -- *i.e.*, a declaration that the Act is

unconstitutional, an injunction against its enforcement, and money damages.  Thus, *Wilton*'s first

factor weighs decisively in favor of abstention.  The second factor, whether the claims can

"satisfactorily be adjudicated in that [state] proceeding," *Wilton*, 515 U.S. at 283, is also readily

satisfied.  Again, if the Landlords prevail in State court and the Act and Regulations are rendered

unenforceable, their claims will have been "satisfactorily adjudicated," and there will be no need

for continued litigation of their claims in federal court.[12]  The third and fourth factors, *id*. at 283,

also favor abstention here.  There is no question that all necessary defendants have been joined in

the State Court Action and have been successfully served with process there.  Moreover, both

---

[12]     While the Commonwealth acknowledges that the Landlords' federal law claims are no longer
pending in State court, that is because the State Court Plaintiffs chose voluntarily to drop them seven
weeks after that action had been filed – and also *after* the Superior Court had already held a hearing on
procedural matters and set a schedule for the resolution of their motion for preliminary injunction (which
at the time encompassed the federal claims), as well as two days *before* the Commonwealth's brief on that
motion was due.  Thus, it is clear that the "claim[s] made in the federal case can be adjudicated in the
state court action," but the landlords chose to drop such claims and instead to engage in plainly piecemeal
litigation.  *National Union Fire Ins. C. of Pitt.,* 2014 WL 12797591, *5 (D. Mass. 2014) ("While National
Union does not specifically raise [a particular argument] as an affirmative defense in the [state action],
that claim certainly could be raised."); *see also Petricca v. FDIC*, 349 F. Supp. 64, 67 (D. Mass. 2004)
(examining whether "claims can and ought to be adjudicated in the state proceeding").  Considering the
Court's "broad discretion" under *Wilton*, these tactical decisions by the landlords should be taken into
account.  *See* Exhibit B hereto.  This same logic counsels for dismissal or stay under the prior-pending-
action doctrine discussed in footnote 8, *supra*.

Plaintiff Matorin and counsel for the Landlords here are obviously amenable to proceeding in

state court, as they brought the case there in the first place.  As for the last of the *Wilton* factors,

the prospect of "uneconomical proceedings" and interference with the state court's "orderly"

administration of the State Court Action are real risks that would be presented by this Court

hearing the Plaintiffs' claims.  As the First Circuit has specified, maximum restraint should be

exercised when addressing requests for declaratory relief on federal constitutional questions.

*Ernst & Young*, 45 F.3d at 535; *El Dia, Inc.,* 963 F.2d at 494.

> B.     *Even if the Court Declines to Dismiss or Stay Based on <u>Wilton</u> Abstention, It*
>        *Should Apply <u>Colorado River</u> Abstention to Achieve the Same Result.*

Even if the Court were to conclude that Plaintiffs' requests for injunctive relief must be

considered under the more stringent *Colorado River* standard, abstention is still warranted.  *See*

*Colorado River Water Conserv. Dist. v. United States*, 424 U.S. 800, 817-18 (1976); *Rio Grande*

*Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 71-72 (1st Cir. 2005) (describing eight

*Colorado River* factors for courts to consider).  Under the *Colorado River* abstention analysis, as

under *Wilton*, "[n]o one factor is necessarily determinative; a carefully considered judgment

taking into account both the obligation to exercise jurisdiction and the combination of factors

counselling against that exercise is required."  *Id.*, 424 U.S. at 818–19.  Here, three of the eight

*Colorado River* factors can be considered inapplicable or neutral: (1) neither the state or federal

court here has assumed jurisdiction over a *res*; (2) there is no issue of inconvenience, as both

courts are located in Boston; and (3) while the state forum is certainly adequate to protect the

parties' interests, *see, e.g., Brooks v. N. H. Sup. Ct.,* 80 F.3d 633, 639 (1st Cir. 1996) (citing the

"basic presumption that state courts are fully capable of safeguarding federal constitutional

rights"), the First Circuit has stated that this fact becomes relevant only if the other factors

present grounds for abstention.  *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529,

536-537 (1st Cir. 1991) ("*Villa Marina II*").  These neutral factors aside, four of the remaining

five *Colorado River* factors weigh in favor of abstention, as discussed immediately below.

First, abstention here would advance the goal of "avoiding piecemeal litigation."  *Rio

Grande*, 397 F.3d at 71-72.  While Defendants recognize that "something more than a concern

for judicial efficiency must animate a federal court's decision to give up jurisdiction" under this

factor, *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 915 F.2d 7, 16 (1st Cir. 1990) ("*Villa

Marina I*"), such exceptional circumstances exist here.  Plaintiffs ask this Court to wade into

issues of federal constitutional law that would not need to be addressed were the State Court

Plaintiffs to prevail in their prior pending action.  *See Cruz v. Melecio,* 204 F.3d 14, 24 (1st Cir.

2000) (abstention appropriate in light of "the real possibility that the Puerto Rico Supreme Court

may decide the case before it on state-law grounds in a way that avoids altogether the necessity

for federal constitutional adjudication").  And, again, the takings claims asserted in the two

actions are functionally identical.  In such situations, it is far better to allow the State court to

first resolve the claims, as opposed to having the state and federal courts engage in "dueling"

constitutional adjudications relating to the same law.  *See Liberty Mutual v. Foremost-

McKesson, Inc.*, 751 F.2d 475, 477 (1st Cir. 1985) (threat of piecemeal litigation where "[i]f the

federal and state actions were to proceed concurrently, there is the real possibility that the two

courts might interpret the same standard policy language differently").

Second, the fact that the State Court Action was filed first favors abstention.  Here,

although the State Court Action has yet to advance to the point of judgment, the State courts

have already considered several motions by the parties, briefing and argument on potential

intervention have occurred, and the State Court Plaintiffs' pending PI motion is soon to be heard

on July 30.  The State Court Action is still more advanced than the instant case, and its merits are to be considered on a preliminary-injunction "likelihood of success" basis shortly.

Third, as regards the potentially "vexatious or contrived nature of the federal claim," *Rio Grande*, 397 F.3d at 72, Plaintiffs by their own public admission are engaged in reactive litigation here with the intent to forum-shop.  See Exhibit B hereto.  Such express statements undoubtedly "raise[ ] the discomfiting specter of forum-shopping."  *Cruz,* 204 F.3d at 23-24;  *see also Glen Oaks Utilities, Inc. v. City of Houston*, 280 F.2d 330, 334 (5th Cir. 1960) (abstention favored where "the jurisdiction of the state court was already invoked and the [plaintiffs] had sought to bring about that unseemly conflict between two sovereignties which the doctrines of comity and abstention are designed to avoid").  Indeed, the State Court Plaintiffs' counsel began speaking publicly about bringing a federal case immediately after his clients suffered a set-back when the Single Justice transferred that matter to the Superior Court, rather than reserving decision and reporting the issues to the SJC.  *See* Ex. B; *see also Rio Grande*, 397 F.3d at 72 (filing of federal suit "as a reaction to an adverse state court action" would be a factor that "weighs heavily in favor of abstention").

Lastly, "respect for the principles underlying removal jurisdiction," *Rio Grande*, 397 F.3d at 72, also favors abstention.  Setting the precedent of exercising federal jurisdiction in these circumstances would effectively grant plaintiffs – and not just defendants – the ability to remove their state court cases to federal court, which would obviously be contrary to Congress's intent underlying the removal jurisdiction statute, 28 U.S.C. § 1441, that "a plaintiff should not be permitted to alter the forum that it selects to litigate its claim against a particular defendant." *Villa Marina I*, 915 F.2d at 14, quoting *American Int'l Underwriters, Inc. v. Cont'l Ins. Co.*, 843 F.2d 1253, 1260-61 (9th Cir. 1988).

In addition to the factors described and applied above, the Court must consider under *Colorado River* whether the two pending cases are sufficiently "parallel."[13] *Villa Marina II*, 947 F.2d at 533. The appropriate point of reference for this inquiry, however, is "the time the federal declaratory action [was] filed . . . ." *Gov't Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998) (*Wilton* abstention context). This "date of filing" approach obviously discourages forum shopping, has been applied in various abstention contexts, and should govern here. *See Bettencourt v. Bd. of Reg. of Med. of Com. of Mass*, 904 F.2d 772, 777 (1st Cir. 1990) ("In determining whether federal proceedings would interfere with ongoing state proceedings, the proper point of reference is the date plaintiff filed his federal complaint.") (applying *Younger* abstention); *OHI Asset (CT) Lender, LLC v. Woodland Manor*, 687 F. Supp. 2d 12, 22 (D.R.I. 2010) (*Wilton* abstention); *Bank of Okla., N.A. v. Tharaldson Motels II, Inc*., 671 F. Supp. 2d 1058, 1062 (D.N.D. 2009) (*Colorado River* abstention).

The broader concept of "parallel proceeding" has not been precisely defined by the First Circuit or the U.S. Supreme Court in the declaratory judgment context, but courts in this Circuit have generally adopted a more expansive view of the term, and they do *not* require perfect identity of either issues or parties. *See Villa Marina II*, 947 F.2d at 533 ("perfect identity of issues is not a prerequisite for dismissal");[14] *Mass. Biologic Labs*, 871 F. Supp. 2d. at 36

---

[13]     While the existence of "parallel" state and federal actions has been deemed to be a prerequisite for *Colorado River* abstention, "the existence or non-existence of pending parallel state proceedings is but one factor for a district court to consider" in addressing *Wilton* abstention. *Reifer v. Westport Ins. Corp.*, 751 F.3d 129, 144 (3d Cir. 2014); *see also U.S. v. City of Las Cruces*, 289 F.3d 1170, 1182-83 (10th Cir. 2002) (under *Wilton/Brillhart*, district courts have a "freer hand" and "evaluation of the parallel nature of the proceedings" is not required); *Arbella Protection Ins. Co. v. Regan Heating and Air Cond'g, Inc.*, 2016 WL 3248256 *2 (D.R.I. 2016) ("[t]he lack of a parallel action does not mean that abstention under *Wilton/Brillhart* is precluded") (internal quotations omitted). To the extent the Court considers it in the *Wilton* context, the discussion in this section would apply equally there.

[14]     Several recent cases from this Circuit show that where, as here, there exists a state action (or even the mere availability of a state action) seeking declaratory relief under Mass. G.L. c. 231A, the plaintiffs

-19-

(proceedings parallel "where substantially the same parties are contemporaneously litigating substantially the same issues").

Here, Matorin is a plaintiff in both the instant case and in the State Court Action, and Matorin's claims in both cases arise out of his interest in the same parcel of real property – 162 Ingleside Ave. in Worcester, Massachusetts.  The plaintiffs' counsel are identical, as are the current named defendants in each case.  Moreover, the State Court Plaintiffs raised in their original state-court Petition all the same federal constitutional claims they press here (*see* Ex. A hereto), and the declaratory relief sought in the State Court Action, if granted, could be invoked by the single plaintiff here who is not a party to the State Court Action.  Thus, at the time that this federal suit was filed, there was undoubtedly a parallel state proceeding, raising substantially the same arguments, through the same counsel, and seeking relief that would affect the same parties.

## CONCLUSION

For reasons stated in Parts I & II of the Argument, *supra*, this case should be dismissed in its entirety or in part.  Alternatively, for the reasons explained in Part III, this matter should either be dismissed or stayed on grounds of abstention as to all counts.

---

need not be identical for the proceedings to be parallel.  In *Flectat Ltd. v. KASL Seabreeze*, LLC, 257 F. Supp. 3d 152 (D. Mass. 2017), the court held that where different plaintiffs had filed an earlier state action against the same defendant seeking the same declaratory relief, the proceedings were sufficiently parallel, *see id*. at 157; *see also Nat'l Union Fire Ins. Co. of Pittsburgh v. Marine Terminal, Inc.,* 2015 WL 3952766 at *4 (D. Mass Jun. 29, 2015) ("[Defendant] is correct that an identity of parties is not required for proceedings to be considered parallel. There need only be an available procedural vehicle in state court by which the federal plaintiff, even if not a party in the state action, can resolve the issues raised in the federal action.").

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Jennifer E. Greaney*
Jennifer E. Greaney (BBO No. 643337)
*Assistant Attorney General*
Pierce O. Cray (BBO No. 104630)
*Senior Appellate Counsel*
Richard S. Weitzel (BBO No. 630303)
*Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2981/2022/2084
Jennifer.Greaney@mass.gov
Pierce.Cray@mass.gov
Richard.Weitzel@mass.gov

DATED: July 24, 2020

## LOCAL RULE 7.1 CERTIFICATION

I hereby certify that I conferred with counsel for Plaintiffs on July 22, 2020 by telephone and attempted in good faith to narrow or resolve the issues that form the basis for this motion. After conferring, we were unable to narrow or resolve the issues presented.

*/s/ Jennifer E. Greaney*
Jennifer E. Greaney
Assistant Attorney General

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Richard S. Weitzel*
Richard S. Weitzel
Assistant Attorney General