UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE BAPTISTE, MITCHELL MATORIN and JONATHAN DAPONTE | ) C.A. NO. 1:20-CV-11335 (MLW) ) ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| MIKE KENNEALY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE EXECUTIVE OFFICE OF HOUSING AND ECONOMIC DEVELOPMENT, and CHARLES BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts, | ) ) ) ) ) ) |
| | ) |
| Defendants. | ) ) ) |

**PLAINTIFFS' MEMORANDUM IN OPPOSITION
TO DEFENDANTS' MOTION TO DISMISS**

**MARIE BAPTISTE, MITCHELL
MATORIN, and JONATHAN
DAPONTE**
By their attorneys,

Richard D. Vetstein, BBO #637681
Vetstein Law Group, P.C.
945 Concord Street
Framingham, MA 01701
Tel: (508) 620-5352
rvetstein@vetsteinlawgroup.com

Jordana Roubicek Greenman, Esq.
BBO# 667842
134 Main Street
Watertown, MA 02472
Tel: 617-379-6669
jordana@jrglegal.com

Dated: August 11, 2020

Plaintiffs respectfully oppose the Commonwealth's Motion to Dismiss or, in the alternative, to Stay, and ask that Court to deny that Motion. The Commonwealth argues for dismissal based on sovereign immunity and the Eleventh Amendment and for alleged lack of standing to contest a particular aspect of the Eviction Moratorium Act. (AG Br. at 6-11.) As set forth below, each of these grounds has been fully addressed by Plaintiffs' Amended Complaint, which they have filed as of right under Fed. R. Civ. P. 15(a)(1). We therefore deal with those arguments briefly.

As for the Commonwealth's remaining arguments based on the *Wilton* and *Colorado River* abstention doctrines, neither doctrine applies because the state case is not "parallel" with this case, which is a threshold barrier to consideration of abstention. As discussed below, even if the Court were to reach those doctrines, abstention is not appropriate in this case.

## I.     Neither Sovereign Immunity Nor the Eleventh Amendment Require Dismissal of the Amended Complaint.

The Eleventh Amendment generally bars the federal courts from entertaining suits brought by a private party against a state or its instrumentality in the absence of state consent. *Los Angeles County Bar Ass'n v. March Fong Eu*, 979 F.2d 697, 704 (9th Cir. 1992) *citing Los Angeles Branch NAACP v. Los Angeles Unif. School Dist.*, 714 F.2d 946, 059 (9th Cir. 1983), *cert. denied*, 467 U.S. 1209 (1984). However, the landmark case of *Ex parte Young,* 209 U.S. 123 (1908), created an exception to this general principle by holding that a suit challenging the constitutionality of a state official's action in enforcing state law is not one against the State. *Id.,* at 159–160. The theory of *Young* was that an unconstitutional statute is void, *id.,* at 159, and therefore does not "impart to [the official] any immunity from responsibility to the supreme authority of the United States." *Id.,* at 160. *Young* also held that the Eleventh Amendment does not prevent federal courts from granting prospective injunctive relief to

1

prevent a continuing violation of federal law. *Id.,* at 155–156, 159.  Both prospective and retrospective relief implicate Eleventh Amendment concerns, but the availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause.  Remedies designed to end continuing violations of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law. *See Pennhurst, supra,* 465 U.S. at 102, 104 S.Ct., at 909. *See also Milliken v. Bradley,* 433 U.S. 267, 97 S.Ct. 2749, 53 L.Ed.2d 745 (1977).

During the Court's status conference on August 4, 2020, the Court and the parties discussed that amending the complaint to remove the Commonwealth of Massachusetts as a party defendant would cure the Eleventh Amendment and sovereign immunity issues.  Plaintiffs have made that change, and this issue is now moot.

In addition to removing the Commonwealth as a defendant, the Amended Complaint adds Governor Baker as a defendant.  Under *Ex parte Young* and its progeny, this is entirely proper as the Amended Complaint seeks prospective injunctive relief to prevent a continuing violation of federal law. *Ex parte Young*, 209 U.S. at 155–156, 159.

Accordingly, the Amended Complaint has cured the alleged defects that the Commonwealth argued justified dismissal of this action, and the Court should therefore deny the Motion to Dismiss on that basis.

II. __Plaintiffs, Through Their Amended Complaint, Have Standing to Prosecute All Counts of the Amended Complaint.__

To establish standing, a plaintiff must demonstrate a sufficient personal stake in the outcome to justify invocation of the judicial process. *Los Angeles County Bar Ass'n*, 979 F.2d at 704, *citing Baker v. Carr*, 369 U.S. 186, 204 (1962).  The Article III "case or controversy" requirement precludes the exercise of jurisdiction by a federal court unless the plaintiff has suffered some actual injury or faces a threatened injury fairly traceable to the action challenged

2

and likely to be redressed by a favorable decision. *Valley Forge Christian College v. Americans United for Separation of Church and State*, 454 U.S. 464, 472 (1982).

The Commonwealth argues that Plaintiffs lack standing to challenge the Moratorium Act's prohibition on serving notices to quit because Plaintiffs Matorin and Baptiste have already issued a 14 day notice to quit and did not allege that they wished to send any additional notice to quit.  AG Brief at 8-9.  The Plaintiffs' Amended Complaint adds a new plaintiff, Jonathan DaPonte, who is owed rent but cannot serve a notice to quit.  Amended Complaint ¶ 33-37. Thus, at least one plaintiff has adequate standing and injury-in-fact to challenge the Act's prohibition on notices to quit.  *See Rental Hous. Ass'n of Greater Lynn v. Hills,* 548 F.2d 388 (1st Cir. 1977) (holding that group of landlords satisfied standing and injury requirements where they complained that grant contravened Section 8 of the Housing and Community Development Act of 1974, and threatened "competitive injury" to the plaintiff association's members, who "will lose tenants to the new project); *Adams v. Watson*, 10 F.3d 915, 921 (1st Cir. 1993)(ruling there is no requirement that a plaintiff plead *multiple* forms of future injury-in-fact).

In any event, Plaintiffs Matorin and Baptiste do not lose their standing to challenge notices to quit because nothing in Massachusetts law prevents the issuance of more than one notice to quit.  Indeed, Baptiste served her tenant with two such notices.  Moreover, as detailed in Matorin's Supplemental Affidavit, he recently discovered that one of his tenants had moved out and that the other had invited his brother to live with him in the unit.  The brother is an unauthorized occupant under the terms of the lease, and Matorin must serve a new notice to vacate on the unauthorized occupant himself, and then commence a new summary process action.  Yet, the Act bars Matorin from issuing any new notice to quit at all, and obviously cannot initiate a new eviction case against the unauthorized occupant, as it would be covered as

3

"non-essential."  Matorin therefore has standing to challenge the bar on serving notices to quit in addition to Plaintiff Daponte.

With respect to the Commonwealth's argument that the Plaintiffs lack standing to challenge the state mandated "Notice of Rental Arrearage" under the Regulations, the Amended Complaint contains new factual allegations (although unnecessary), that all of the Plaintiffs object to sending this form because it requires them to emphasize to their non-paying tenants that they cannot be evicted, and provides links to tenants for lawyer referral services and to various pro-tenant organizations like CityLife/Urbana Vida, which they believe would undermine their attempts to ensure that their tenants pay the rent owed, or vacate the premises voluntarily. Amended Complaint ¶¶ 40, 45, 52.  This is more than sufficient to allege an injury in fact on a compelled speech First Amendment claim.  *See National Inst. Of Family & Life Advocates v. Becerra*, 138 S.Ct. 2361, 2371 (2018).  Moreover, the Commonwealth's hyper-technical argument regarding accepting rent vs. use and occupancy payments is meaningless.  Under the Act and Regulations, the ***only*** notice that a landlord is allowed to send for unpaid rent *or* use and occupancy is the state-mandated form.  The Plaintiffs' tenants still owe monies month after month, despite being served with a notice to quit, and the purpose of the "Notice of Rental Arrearage" is to remind the tenant they still have an obligation to pay rent.  Indeed, the Commonwealth has argued throughout this case that the Act "does not eliminate the obligation to pay rent, or even landlords' ability to collect rent."  AG Brief at 24.  The Commonwealth misses the point of the Plaintiffs' claims.  They ***do not want*** to send this state-required notice explicitly telling them that they cannot be evicted and putting their tenants in contact with tenant groups that are diametrically opposed to Plaintiffs' positions.

**III.**   **The Court Should Neither Dismiss Nor Abstain.**

It is true that the Court has discretion to determine whether to exercise jurisdiction in actions under the Declaratory Judgment Act, 28 U.S.C. § 2201.  The Court should do so here. Neither the *Wilton* nor *Colorado River* doctrines support abstaining.  To the contrary, and as discussed below, "considerations of practicality and wise judicial administration," *Wilton v. Seven Falls Co.*, 515 U.S. 277, 288 (1995), counsel strongly in favor of the Court exercising its jurisdiction to directly address Plaintiffs' serious federal constitutional claims now.

**A.   This Case is Not "Parallel" to the State Court Proceeding, and therefore Neither the *Wilton* nor *Colorado River* Abstention Doctrines Come Into Play.**

"Before considering whether abstention is warranted under either the *Colorado River* or *Wilton/Brillhart* doctrine, the court must first determine whether this suit is parallel to the State Court Action."  *Certain London Mkt. Co. Reinsurers v. Lamorak Ins. Co.*, No. CV 18-10534-NMG, 2019 WL 1222758, at *7 (D. Mass. Feb. 20, 2019), report and recommendation adopted, No. CV 18-10534-NMG, 2019 WL 7562429 (D. Mass. Mar. 8, 2019).  "If the suits are not parallel, then the court need not conduct any further analysis."  *Id. See also Amvest Corp. v. Mayoral Amy*, 778 F. Supp. 2d 187, 197 (D.P.R. 2011) ("As a threshold matter, the District Court must first establish if there are parallel proceedings in state and federal court. … If the proceedings are not parallel, then the [abstention] inquiry comes to an end.").

To be "parallel," the cases need not be perfectly identical.  However, there must be "substantially the same parties … contemporaneously litigating substantially the same issues" and there must be a "substantial likelihood that the state litigation will dispose of all the claims presented in the federal case."  *Certain London Mkt.*, 2019 WL 1222758, at *7 (*quoting Mass. Biologic Labs. Of the Univ. of Mass. v. MedImmune*, 871 F. Supp. 2d 29, 36 (D. Mass. 2012)). None of these factors apply here.

1.   Abstention is Not Warranted Where the Parties Differ.

First, "*Wilton/Brillhart* abstention is not warranted where, as here, a party to the declaratory judgment claim in the federal case is not a party to the state court action." *RFF Family Partnership, LP v. Link Development, LLC*, 849 F. Supp. 2d 131, 136 (D. Mass. 2012). Neither Plaintiffs Baptiste nor Daponte are parties in the state court action.  Although cases may be sufficiently parallel where the parties are "substantially" the same, that is also not the case here.  For example, in *Certain London Market*, the plaintiffs ("LMR") were not parties to the state court action in which Certain Underwriters of Lloyd's of London were the plaintiffs. However, LMR acknowledged that it was a party-in-interest to the same Reinsurance Contracts at issue in both cases, and that therefore LMR and Lloyd's were "substantially the same parties." 2019 WL, at *7.   By contrast here, while Plaintiff Matorin is a plaintiff in both cases, Plaintiffs Baptiste and Daponte are not plaintiffs in the state court proceeding.  This is not simply nomenclature: each of the Plaintiffs owns a different rental property and has a different tenant, and while Plaintiff Matorin served a Notice to Quit, filed a summary process complaint and has had his case stayed indefinitely, Plaintiff Baptiste has not filed a summary process proceeding and Plaintiff Daponte has not been able to file a Notice to Quit or commence a summary process proceeding.  Thus, none of the Plaintiffs are in any way "substantially the same" as the others.

Moreover, the "real question" is whether parties from the state case are "involved in the same *issue* that is presented in the federal declaratory action." *Id.* at 136 (*quoting Sparta Ins. Co. v. Smith*, 2011 WL 2175103, at *4 (M.D. Ala. June 3, 2011) (emphasis in original).  As discussed further below, the issues that Matorin has raised in the state court proceeding are decidedly *not* the same issues present in this case: there, the issues are whether the Eviction Moratorium Act infringes Matorin's rights under Arts. 10, 11, 29, and 30 of the Massachusetts

6

Declaration of Rights.  Not one of those issues is present in this case, which is based exclusively on Plaintiffs' rights under the United States Constitution.  Therefore, even as to Plaintiff Matorin, the state case and this case are not parallel.

Accordingly, because this case does not involve "substantially the same parties" as the state case, abstention is not warranted under either *Wilton* or *Colorado River*, and the Court need go no further in denying the Commonwealth's motion to dismiss or stay based on abstention.

        2.   The State Case Does Not Involve "Substantially the Same Issues" as This Case.

Second, the case pending in the Massachusetts Superior Court does not involve "substantially the same issues" as are presented here.  The three Plaintiffs in this case assert claims based exclusively on the U.S. Constitution: violations of the First Amendment right to petition (Count I), the First Amendment right to freedom of speech (Count II), the First Amendment right against compelled speech (Count III), the bar on impairing the obligation of contracts under Article I, Section 10, Clause I of the Constitution (Count IV), and the bar on taking private property for public use without just compensation under the Fifth Amendment Takings Clause (Count V).

By contrast, the claims in the state case are based exclusively on the Massachusetts Declaration of Rights.  Specifically, the state case alleges that the Eviction Moratorium Act violates the separation of powers under Article 30, Matorin's right to access the courts under Articles 11 and 29, and that it constitutes a taking under Article 10.  Although the Commonwealth argues that Plaintiff Matorin's takings claim under Article 10 of the Massachusetts Declaration of Rights is similar to the three Plaintiffs' claim under the Takings Clause of the Fifth Amendment to the U.S. Constitution, that does not mean that the two cases overall involve "substantially similar issues."  The Commonwealth does not contest that in the

7

state case Plaintiff Matorin raises several claims under the Massachusetts Declaration of Rights that have no cognate under the U.S. Constitution.  And conversely, the three Plaintiffs' claims in this case arising under the First Amendment and the Contracts Clause have no analogues in the state case.   As for the takings claim, although Massachusetts courts have construed Article 10 analogously to the Fifth Amendment Takings Clause, the fact remains that Massachusetts courts interpret Article 10 *in light of* federal courts' application of the Fifth Amendment—not the reverse.  Especially in this case of first impression, it makes no sense to abstain from applying the Fifth Amendment Takings Clause to the Eviction Moratorium Act, when the state court's application of Article 10 should be informed by this Court's application of the Fifth Amendment. *Cf. Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56, 72 (1st Cir. 2005) (declining to abstain in a case involving "interpretation of a complicated area of federal law," where "there appear to be no state law issues.  There is no reason to defer to the state court's interpretation of the legal issues involved." … It is true that prospective relief also could have been sought in the Commonwealth courts.  However, it is reasonable [to] want the federal courts to devise prospective relief, given the federal court's greater familiarity with the [federal law].").

The Commonwealth contends that the timing of the Plaintiff Matorin's withdrawal of the federal constitutional claims from the state case militates in favor of abstention because substantial similarity should be decided as of the date the federal action was filed.  (AG Brief at 14-15 and 19.)  The Commonwealth makes too much of the cases it cites and elevates form over substance.  Whether a state court proceeding exists at the time a federal complaint is filed is of course relevant – a federal court need not abstain for a later-filed state case.  But in evaluating whether "substantially the same issues" are in play in both the state and federal cases, it makes sense to evaluate the situation at the time abstention is sought because depending on the

circumstances, the principles underlying abstention doctrines – avoiding interference in ongoing state court proceedings and considerations of judicial efficiency—may counsel in favor of abstention or abstention may serve no purpose at all.  Here, abstention would be a procedural "gotcha" that would effectively preclude not only Plaintiff Matorin but Plaintiffs Baptiste and Daponte as well from having their federal constitutional claims decided at all; if this Court were to abstain on the theory that Plaintiff Matorin alone could have pursued the federal claims in state court, neither he nor the other Plaintiffs would ever be able to obtain protection of their federal constitutional rights.  Indeed, if Plaintiff Matorin were not also a Plaintiff here, the Commonwealth would have no basis whatsoever for its abstention argument.

The Commonwealth cites no authority mandating a contrary result.  *See OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n*, 687 F. Supp. 2d 12, 22 (D.R.I. 2010) (noting that the First Circuit has not indicated at which point in time determination is to be made).  Other courts have indicated that the issue is properly evaluated as of the time of the abstention.  *See, e.g., Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 571-72 (6th Cir. 1994) (reversing abstention because "no parallel state action existed at the time the district court abstained"); *Crawley v. Hamilton County Com'rs*, 744 F.2d 28, 31 (6th Cir. 1984) ("The issue is whether [the state proceeding], as it *currently* exists, *is* a parallel, state-court proceeding. Because it is not, we need not undertake the five-factor analysis called for in *Moses H. Cone Memorial Hospital*.")(emphasis in original).  Similarly, in *Certain London Mkt.*, this Court stated that the analysis is whether "substantially the same parties [are] *contemporaneously litigating substantially the same issues*, and there must be a "substantial likelihood that the state litigation *will dispose of* all of the claims presented in the federal case." 2019 WL 1222758, at *7 (emphasis added) (*quoting Mass. Biologic Labs. of the Univ. of Mass. v. MedImmune*, 871 F.

Supp. 2d 29, 36 (D. Mass. 2012).  *See also Cruz v. Melecio*, 204 F.3d 14, 24 (1st Cir. 2000)

(noting that state case "*is* more comprehensive than the newer federal case because it *covers* both

commonwealth and federal constitutional claims," and so "judicial efficiency and eliminating

piecemeal litigation favor resolving these closely related claims in a single forum.") (emphasis

added).   Here, Plaintiff Matorin is not *contemporaneously* litigating in state court the federal

constitutional issues raised by the three Plaintiffs here, and there is *precisely zero* likelihood that

the state case will dispose of any of the claims presented in this case.

Nor, as the Commonwealth contends, is this a situation where Plaintiff Matorin has

reacted to a negative decision in the state court by filing a "reactive" declaratory judgment action

in this Court in response to a "set-back" in state court or an indication of forum shopping.[1]  (AG

Br. at 18-19)  There was no negative decision on the merits in state court to which Plaintiff

Matorin reacted by joining with the other Plaintiffs in this Court.  It was simply a question of

efficiency.  Plaintiff Matorin joined with Plaintiff Baptiste in filing in this Court and then

withdrew his federal constitutional claims from the state court because Plaintiff Baptiste was

seeking relief in this Court and it made sense as a matter of judicial economy and to avoid

potentially conflicting results by having this Court address Matorin's federal claims as well.

Indeed, the situation is the reverse of those in the cases the Commonwealth cites.  In *Glen

Oaks Utilities, Inc. v. City of Houston*, 280 F.2d 330, 334 (5th Cir. 1960) (AG Brief at 18), the

plaintiffs "sought to bring about that unseemly conflict between two sovereignties which the

doctrines of comity and abstention are designed to avoid."  Here, of course, Plaintiff Matorin

withdrew the federal claims from his state court case specifically to avoid any such conflict.

---

[1] A "reactive" action would be, for example, being sued in a state court breach of contract action
and countering with a federal declaratory judgment action that there was no breach of contract.

Similarly, in *Rio Grande Community Health Center, Inc. v. Rullan*, 397 F.3d 56 (1st Cir. 2005)

(AG Brief at 18), the court held that the priority of the state case "was meant to be looked at in a

'pragmatic, flexible manner[,] with a view to the realities of the case at hand' and should focus

on how much 'progress has been made in the two actions.'" 397 F.3d at 71-72 (quoting Moses H.

Cone, 460 U.S. at 21).  The court specifically held that the federal action was *not* filed or pursued

as a reaction to an adverse state court action, but stated in *dicta* that doing so would strongly

weigh in favor of abstention.  Id. at 72, *citing Cruz v. Melecio*, 204 F.3d 14 (1st Cir. 2000).  In

*Cruz*, the plaintiffs waited to file suit in federal court only after a Puerto Rico court had entered a

final judgment adverse to them, which the court stated "raises the discomfiting specter of forum-

shopping."  *Id*. at 24.  That is simply not the case here.[2]

Because the state case does not involve "substantially the same issues" as this case, once

again the Court need go no further in order to reject the Commonwealth's abstention arguments.

> 3.   There is No Substantial Likelihood that the State Litigation Will Dispose of
>      All the Claims Presented in the Federal Case.

Third, as noted above, it is impossible for the state court to dispose of *any* of the claims

presented in this case.  The state case will adjudicate claims that the Eviction Moratorium Act

violates the state plaintiffs' rights under the Massachusetts Declaration of Rights.  This case will

---

[2] The Commonwealth also argues that the takings claim (Count V) should be stayed or dismissed as to Plaintiff Matorin under the prior-pending-action doctrine.  (AG Brief at 11, n. 8.)  This is pointless.  Staying or dismissing Count V as to only Plaintiff Matorin would accomplish nothing as far as judicial efficiency or avoiding inconsistent judgments.  The Court would still have to resolve Count V as to Plaintiffs Baptiste and Daponte, and the Court's legal conclusion would still apply to Plaintiff Matorin.  Moreover, while the SJC has "interpreted art. 10 consistently to provide property owners the same protection afforded under the just compensation clause of the Fifth Amendment," *Blair v. Dept. of Conservation & Recreation*, 457 Mass. 634, 642 (2010), the application of article 10 will not *decide* the Fifth Amendment issue; at best, it will represent the state court's best judgment as to how the federal courts might apply the Fifth Amendment.  It remains the province of *this Court* to decide the federal constitutional issues, and this is especially true in a significant case of first impression such as this.

11

adjudicate claims that the Act violates the Plaintiffs' rights under the United States Constitution. Resolving the state claims will have no impact at all on the resolution of Plaintiffs' federal claims on the merits.  Plaintiffs have filed their claims in the exact manner suggested by the case law – state constitutional claims have been brought exclusively in state court, and federal constitutional claims have been brought exclusively in federal court.

The Commonwealth argues that, if the state plaintiffs prevail on their state claims and obtain an injunction against enforcement of the Eviction Moratorium Act, then there will be no need for this Court to reach the federal constitutional issues at all.  (AG Brief at 13.)  To be clear, this is not an argument in support of abstention *per se* but rather a general point about the Court's discretion to refrain from exercising jurisdiction under the Declaratory Judgment Act.  In *Ernst & Young v. Depositors Economic Protection Corp.*, 45 F.3d 530 (1st Cir. 1995) (AG Brief at 13), the court dismissed the case on ripeness grounds rather than as an act of discretion not to exercise declaratory judgment jurisdiction, but noted in *dicta* that such discretion should be exercised carefully in matters of great public concern or when a federal court might be dragged prematurely into uncertain constitutional issues.  *Id.* at 535.  In the other case cited by the Commonwealth, *El Dia, Inc. v. Hernandez Colon*, the court declined to exercise declaratory judgment jurisdiction because the plaintiffs had *already obtained a TRO* grounded in Puerto Rico law, rather than the U.S. Constitution.  963 F.2d 488, 495 (1st Cir. 1992).  The court held that the district court should have declined declaratory judgment jurisdiction in that context, rather than "leaping into the fray even though, as a practical matter, there may no longer have been any fray into which to leap."  *Id.*  That is obviously not the case here: the state court has only recently heard arguments on the state plaintiffs' motion for preliminary injunction based on the state constitutional claims and there is no indication when that court will rule.  And even if

12

the state plaintiffs succeed in obtaining a preliminary injunction, it is certain that the Commonwealth will immediately appeal and will seek a stay of the Superior Court's order pending resolution of that appeal, given the apparent importance to the Commonwealth of maintaining the status quo of the eviction moratorium.  They will likely obtain a stay while the Appeals Court or more probably the Supreme Judicial Court hears the case.[3]  There is, therefore, virtually no chance that the state plaintiffs will obtain the kind of immediate protection that was *already* in place in *El Dia*.  And of course, if the state plaintiffs do not obtain preliminary injunctive relief, then there would be no reason at all to decline declaratory judgment jurisdiction to resolve Plaintiffs' important federal constitutional claims.

No matter what happens in the Superior Court, the federal constitutional claims that the three Plaintiffs raise in this case will still require prompt resolution if Plaintiffs' constitutional rights are to have any meaning at all.  Plaintiffs have been suffering daily harm from the Eviction Moratorium since it was enacted in mid-April and as time goes on not only does their immediate harm increase, but the risk of financial catastrophe rises as well.  Plaintiff Baptiste continues to have to borrow from her own retirement funds, which she may not ever be able to pay back, in order to maintain both her rental property and her primary residence and living expenses, for which she depends on receiving rent.  While she has been unable to regain possession of her rental property and to obtain a paying tenant, she suffered an injury in June that made her unable to work.  The ongoing Moratorium has therefore significantly increased the risk of total loss of her retirement funds, her rental property, and her ability to pay her own expenses and to pay for her primary residence.  Similarly, while Plaintiff Matorin has been flexible with his other two

---

[3] Plaintiffs do not concede the Commonwealth would be legally entitled to a stay pending appeal, but simply point out the reality of the various considerations the Superior Court would balance in weighing a stay of such an important case.

tenants who have struggled but managed to continue paying their rent so far, as time goes on the risk mounts that one or both of them will be unable to continue paying.  If that happens, the rent will no longer be enough even to meet the monthly mortgage payment, let alone the other expenses of operating the property.  Further delays in obtaining protection of Plaintiffs' federal constitutional rights cannot be justified by the mere *possibility* that *at some point* the state court proceeding might yield a positive result.  *See Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 26 (1983) ("Finally, in this case an important reason against allowing a stay is the probable inadequacy of the state-court proceeding to protect Mercury's rights.")

Finally, if the state plaintiffs ultimately do not prevail in the state case, even the Commonwealth will be unable to argue that this Court should decline to exercise declaratory judgment jurisdiction on the basis that it is "premature" or "unnecessary" for this Court to decide the federal constitutional claims.  But by then, Plaintiffs' will have suffered the deprivation of their federal constitutional rights for an even longer period of time.  Such an unnecessary delay in obtaining the federal constitutional protections to which they are entitled is unconscionable and if the eviction moratorium—currently extended through October 18 and subject to indefinite potential further extensions—ultimately expires prior to this Court's consideration of the constitutional claims, the constitutional violations will be mooted without ever having been addressed.  *Cf. Marek v. Rhode Island*, 702 F.3d 650, 654 (1st Cir. 2012) (exception to mootness in cases where violation is capable of repetition yet threatens to evade review).

In short, there is no "substantial likelihood that the state litigation will dispose of any, let alone all of the claims presented in this case.  Accordingly, once again, the state case is not "parallel" to this case for purposes of abstention and the Court need go no further to deny the Commonwealth's motion to dismiss or stay.

### B. Wilton Abstention Does Not Apply.[4]

As discussed *supra*, the threshold inquiry before reaching the question of abstention is whether the state and federal cases are "parallel." Since they are not parallel here, the abstention analysis comes to an end. *Certain London Mkt.*, 2019 WL 1222758, at *7; *Amvest Corp.*, 778 F. Supp. 2d at 197. Yet, even if the cases were parallel, *Wilton* abstention would not apply.

In *Wilton v. Seven Falls Co.*, 515 U.S. 277 (1995), the Supreme Court resolved a Circuit conflict as to when a declaratory judgment action may be stayed in favor of a parallel state case. *Id.* at 281. The Court held that notwithstanding the rule announced in *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800 (1976), that "federal courts have a 'virtually unflagging obligation' to exercise the jurisdiction conferred on them by Congress" except in "exceptional circumstances," *id.* at 284 (quoting *Colorado River*, 424 U.S. at 813), the standard established in *Brillhart v. Excess Ins. Co. of America*, 316 U.S. 491 (1942), continued to apply to cases arising under the Declaratory Judgment Act. *Wilton*, 515 U.S. at 286. The Court held that

---

[4] In addition to *Wilton* and *Colorado River* abstention, the Commonwealth argues that *Pullman* abstention should apply because of the first-impression nature of the state plaintiffs' claims based on articles 11, 29, and 30 of the Massachusetts Declaration of Rights. (AG Brief at 14, n.11.) *Pullman* abstention applies only when "a federal constitutional claim is premised on an unsettled question of state law," and giving the state court the opportunity to settle the state-law question may avoid the necessity of deciding a federal constitutional question. *Harris County Com'rs Court v. Moore*, 420 U.S. 77, 83 (1975). It applies where a federal constitutional challenge turns on the meaning of an unclear state statute if the state court is likely to construe the statute in a way that would avoid the need for a federal constitutional ruling. *Id.* at 84. But the Commonwealth reads too much into the Court's holding that the same considerations apply where "the uncertain status of local law stems from the unsettled relationship between the state constitution and a statute." *Id.* Specifically, in *Harris*, the interpretation of the Texas Constitution would define the scope of the state statute, and the scope of that statute would in turn determine the nature and vitality of the federal constitutional claim. *Id.* at 85. Here, the Eviction Moratorium Act is not unclear and its meaning does not depend on the interpretation of the Declaration of Rights. That the constitutionality of the Act under arts. 11, 29, and 30 is an issue of first impression does not mean that *Pullman* applies. There is no reason to abstain from first impression issues of federal constitutional law simply because a state case presents first impression issues under the state constitution.

because the Declaratory Judgment Act specifies that a court "*may* declare the rights and other

legal relations of any interested party seeking such a declaration," 28 U.S.C. §2201 (emphasis

provided by Court), "[i]n the declaratory judgment context, the normal principle that federal

courts should adjudicate claims within their jurisdiction yields to considerations of practicality

and wise judicial administration."  515 U.S. at 288.

 *Wilton* concerned a dispute over commercial liability insurance coverage arising out of a

jury verdict in excess of $100 million on various state law claims.  The insurance underwriters

refused to defend or indemnify in that suit and filed a complaint for a declaratory judgment that

their policies did not apply.  That suit was voluntarily dismissed on condition that the insured

would provide notice before suing on the policy.  When the insured notified the underwriters of

their intention to file suit in Texas state court, the underwriters re-filed their federal declaratory

judgment action.  The insured then filed suit in state court and that case was made non-diverse

and nonremovable.  The insured moved to dismiss or stay the federal case, and the District Court

entered a stay, observing that "the state lawsuit … encompassed the same coverage issues raised

in the declaratory judgment action."  *Wilton*, 515 U.S. at 280.  The Court specifically held in that

context that the district court's did not abuse its discretion in granting a stay.  The Court made

clear, however, that its holding was limited to the context of state and federal cases that both

raised the same state law issues:

> We do not attempt at this time to delineate the outer boundaries of
> that discretion in other cases, for example*, cases raising issues of
> federal law* or cases in which there are no parallel state
> proceedings.  Like the Court of Appeals, we conclude only that the
> District Court acted within its bounds in staying this action for
> declaratory relief where parallel proceedings, *presenting
> opportunity for ventilation of the same state law issues* were
> underway in state court.

*Id.* at 290 (emphasis added).  Put simply, *Wilton* established only that absention may be appropriate (though ultimately within the court's discretion) where there are no issues of federal law and the *same state law issues* are present in both state and federal court.

*Wilton* abstention is not appropriate here.  The state and federal cases do not raise the same questions of state law—the federal case raises no issues of state law at all, and the state case conversely raises no questions of federal law.  Therefore, the state case necessarily does not present the "opportunity for ventilation of the same state law issues."  *Id.* at 290.  Nor would abstention serve "the virtue of avoiding uneconomical proceedings, vexatious proceedings, and gratuitous interference by a federal court with an orderly and comprehensive suit in a state court, presenting *the same issues*, *not governed by federal law*, between the same parties."  *Certain London Market* 2019 WL 1222758 at *5 (emphasis added).  As the court held in *Standard Fire Ins. Co. v. Gordon*, 376 F. Supp. 2d 2018 (D.R.I. 2005) (AG Brief at 13), "there is little reason to dismiss … [f]ederal declaratory relief actions that do not involve parallel state court proceedings." *Id.* at 231.  *Compare Petricca v. FDIC*, 349 F. Supp. 2d 64, 67 (D. Mass. 2004) (dismissing on the basis of *Wilton* abstention where the federal case was simply a "mirror image" of the state proceeding and exercising declaratory judgment jurisdiction "would be uneconomical and a gratuitous interference in a state court proceeding which involves only state issues that have already reached the appellate level."), *and Mass. Biologic Labs. of the University of Massachusetts v. MedImmune*, 871 F. Supp. 2d 29, 36 (D. Mass. 2012) (same, where "the overarching issue in both cases is the rights and obligations of the parties under the RSV License Agreement and the companies with a stake in the outcome of the dispute are parties to both actions.").

## C. *Colorado River* Abstention Does Not Apply

As is the case with *Wilton* abstention, the absence of "parallel" state and federal cases is a threshold bar that obviates any consideration of *Colorado River* abstention. *See supra*. Since there is no "parallel" proceeding, the Court need not go any further to conclude that *Colorado River* abstention does not apply. Moreover, where a motion to dismiss "fails under *Wilton*'s broad discretionary analysis, it necessarily also fails under *Colorado River*'s more stringent 'exceptional circumstances' test," and the court need not undertake an in-depth analysis of each of the *Colorado River* factors. *Standard Fire Ins. Co. v. Gordon*, 376 F. Supp. 2d 218, 233 n.13 (D.R.I. 2005).

Yet, even considering the doctrine, abstention is not appropriate. Under *Colorado River*, a federal court may abstain from exercising jurisdiction to avoid duplicative litigation between federal and state proceedings only "[u]nder truly 'exceptional circumstances.'" *Valle-Arce v. Puerto Rico Ports Auth.*, 585 F. Supp. 2d 246, 250 (1st Cir. 2008) (*quoting Colorado River*, 424 U.S. at 813). First, as discussed above, the court must determine whether the state and federal cases are "parallel." If they are "parallel," then the court must consider various factors to determine whether "exceptional circumstances" justify abstention. *Id.* at 250-51.

The Commonwealth wrongly argues that four of the *Colorado River* factors constitute such "exceptional circumstances" that this Court should abstain.[5] First, abstention would not

---

[5] The Commonwealth contends that *Wilton* abstention applies to Plaintiffs' declaratory claims and that *Colorado River* applies, at most, to Plaintiffs' coercive claims for monetary damages under Count V and for injunctive relief to the extent that the First Circuit requires a "surgical" approach to applying abstention. Thus, the Court should abstain as to the coercive claims only if "exceptional circumstances" exist. The Commonwealth argues, however, that as there are no "*freestanding* coercive claims," *Wilton* abstention should apply across the board. (AG Brief at 12 n. 9-10.) In *Massachusetts Biologic Labs*, this court applied the "surgical" approach despite acknowledging that the First Circuit had not adopted the rule. 871 F. Supp. 2d at 35. This Court need not resolve that issue either, because as set out in the text, the threshold "parallel" litigation standard applicable to both *Wilton* and *Colorado River* abstention is lacking, and therefore the

advance the goal of "avoiding piecemeal litigation."  There is no risk of piecemeal litigation

because this case does not depend on the resolution of factual questions to be litigated in the state

case, and the state court will not consider the same issues as this Court.  *Standard Fire Ins.*, 376

F. Supp. 2d at 233 n.13 (*citing Travelers Indemn. Co. v. Madonna*, 914 F.2d 1364, 1369 (9th Cir.

1990) ("Piecemeal litigation occurs when different tribunals consider the same issue, thereby

duplicating efforts and possibly reaching different results.")  The Commonwealth's suggestion

that this Court might not need to resolve the federal constitutional claims if the state court

theoretically eventually concludes that the Eviction Moratorium Act is unconstitutional under

one or more of the provisions of the Massachusetts Declaration of Rights (AG Brief at 17), is

immaterial to whether exercising declaratory judgment jurisdiction here would lead to

"piecemeal litigation."  As discussed above, the possibility that at some point down the road

there might be a final state court judgment concerning the state constitution does not obviate the

need for this Court to resolve the federal constitutional issues present here.  Indeed, in other

abstention doctrines, the fact that a decision on a state constitutional provision might obviate the

need for a federal constitutional ruling has been held not to require abstention.  *See, e.g.*, *Guiney

v. Roache*, 833 F.3d 1079, 1082 (1st Cir. 1987) (*Pullman* abstention not required for

interpretation of parallel state and federal constitutional provisions).  The Commonwealth's

argument that the takings claims are "functionally identical" and therefore the state should be

permitted to resolve the claim first is also misplaced.  (AG Brief at 17.)  First, the focus on the

takings claims ignores all of the other claims that are not even arguably similar.  As to the

takings claims, that the state court follows the lead of the federal courts applying the federal

---

Court does not need to consider the *Wilton* and *Colorado River* factors or determine whether
"exceptional circumstances" exist under *Colorado River*.  And even if the Court does address the
factors for *Wilton* and *Colorado River* abstention, those factors do not support abstaining.

Takings Clause actually militates toward this Court resolving that claim first.  In this case of first impression, the federal court should resolve the federal takings claim because the state court cannot do so and cannot anticipate this Court's resolution of the federal issue.  The Commonwealth unconvincingly cites *Liberty Mutual v. Foremost-McKesson*, 751 F.2d 475, 477 (1st Cir. 1985).  (AG Brief at 17.)  There, the risk was that the courts might "interpret the same standard policy language differently."  Here, there is simply the possibility that the state court might interpret the state constitution one way, while this Court might interpret the federal constitution in another way.  There is nothing "piecemeal" about such a result; rather, this would reflect the legitimate roles of each court in interpreting its own constitutional provisions.

Second, the timing of the state case and this case is of no import in the abstention analysis.  (AG Brief at 17.)  The state case was initially filed with a petition to the SJC in May, just a few months before Plaintiffs filed this case, and the federal case was filed even sooner after the state case was remanded back down to Superior Court.  As the Commonwealth must acknowledge, nothing of substance has occurred in either case in the interim.  To the contrary, the "several motions" that the Commonwealth asserts have already been considered have not been substantive (a motion to intervene/for "enhanced" amicus status was decided), and the state plaintiffs' motion for preliminary injunction has been briefed and argued but there has been no decision.  Nothing of substance has occurred and both cases are proceeding reasonably expeditiously.  As the Supreme Court held in *Moses H. Cone Mem. Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 3 (1983), "priority should not be measured exclusively by which complaint was filed first, but rather in terms of how much progress has been made in the two actions."  Similarly, the *Standard Fire Insurance* court held that:

> the order in which jurisdiction was obtained by the federal and
> state courts is of little consequence in this case, where the

> declaratory judgment action was brought just three months after
> the underlying tort suit, and where … no substantial discovery has
> taken place in either action.

376 F. Supp. 2d at 233 n.13.  *See also Woodward v. Sentry Select Ins. Co.,* No. Civ.A. 03–2481,

2004 WL 834634, at *4 (E.D. La. Apr.16, 2004) ("when state and federal suits are proceeding at

approximately the same pace, th[is] ... weighs against abstention").

    Third, there is nothing "vexatious or contrived" about Plaintiffs' federal claims in this

case.  Plaintiff Matorin dismissed the federal claims in the state court in order to join with

Plaintiff Baptiste, who was filing her federal claims in this Court.  If Matorin had not joined with

Baptiste in this case but instead the state plaintiffs had simply dismissed the federal claims in

light of Baptiste's filing in this Court, there would be no basis for arguing that this case was

"vexatious or contrived."  That Matorin chose to join with Baptiste in this case does not render it

so.  The cases upon which the Commonwealth relies do not support its position.  In *Cruz v.*

*Melecio*, 204 F.3d 14 (1st Cir. 2000), the court *sua sponte* raised abstention where the appellants

had filed suit in federal court for declaratory judgment relief while simultaneously appealing

from a prior adverse final judgment of the same claims in state court.  In that specific context, the

court posited that "their timing raises the discomfiting specter of forum-shopping" and that the

federal suit was "an effort to detour around an unfavorable judgment" of the state court.  *Id.* at

24.  Similarly, in *Glen Oaks Utils., Inc. v. City of Houston*, 280 F.2d 330 (5th Cir.1960), the

plaintiffs filed their federal action while simultaneously appealing an adverse state court

judgment on the same claims.  The court held that the plaintiffs "had sought to bring about that

unseemly conflict between two sovereignties which the doctrines of comity and abstention are

designed to avoid."  *Id.* at 334.  Neither *Cruz* nor *Glen Oak* has any relevance.  There has been

no prior state court judgment, nor any substantive decision on any issue, and the state plaintiffs

dismissed their federal claims and Plaintiff Matorin joined with Plaintiff Baptiste in this action specifically to avoid any conflict between the state and federal sovereignties.

Lastly, the Commonwealth somewhat obscurely argues that "respect for the principles underlying removal jurisdiction" favor abstention.  (AG Brief at 18.)  The argument seems to be that exercising declaratory judgment jurisdiction would somehow grant plaintiffs, rather than defendants, the ability to remove cases to federal court.  This is nonsensical.  This case was not removed to federal court, and the fact that Plaintiff Matorin joined with Plaintiff Baptiste in asserting the federal claims in this case is in no way akin to removal.  Again, Plaintiff Baptiste brought her claims in this court, which she was free to do whether or not Plaintiff Matorin chose to join her.  That he did join her does not make it a "removal" and does not favor an abstention that otherwise would not be available.

## IV.    The Court Should Exercise Declaratory Judgment Jurisdiction to Resolve Plaintiffs' Constitutional Claims.

Having demonstrated that the Commonwealth's abstention arguments lack merit, we turn to the general point that, issues of parallelism and abstention aside, the exercise of declaratory judgment jurisdiction is ultimately within the discretion of the court, under either the generous *Wilton* standard or the more restricted *Colorado River* standard.  Here, the Court should exercise its discretion to hear and resolve Plaintiffs' federal claims.

The state constitutional issues before the state court and the federal constitutional issues before this Court are questions of first impression. Neither court has ever addressed the constitutionality of the state's indefinite suspension—effectively, a complete elimination—of the most basic foundation of the entire relationship between a rental property owner and a tenant. Although rental property is a highly regulated area in which the state has historically tinkered with the relationship, never before has it eviscerated the basic premise of occupancy in exchange

for rent, in the absence of which the property owner is entitled to regain possession.  The state

has never taken anything like such an action before.  That the state and federal cases raise issues

of first impression under both the state and federal constitutions emphasizes the compelling need

for both courts to timely address the legal issues within their sovereignty.  That the ultimate

resolution of the state case will unquestionably not resolve the federal constitutional claims

practically mandates it.

The Court should exercise its declaratory judgment jurisdiction to hear and resolve

Plaintiffs' federal constitutional claims.

<u>**CONCLUSION**</u>

For the foregoing reasons, this Court should deny the Commonwealth's Motion to

Dismiss or, in the Alternative, to Stay this proceeding.

Respectfully submitted,

**MARIE BAPTISTE, MITCHELL
MATORIN , and JOHN DAPONTE**
By their attorneys,

 _/s Richard D. Vetstein_____
Richard D. Vetstein, BBO #637681
Vetstein Law Group, P.C.
945 Concord Street
Framingham, MA 01701
Tel: (508) 620-5352
rvetstein@vetsteinlawgroup.com


/s/ Jordana R. Greenman
Jordana R. Greenman, Esq.
BBO# 667842
134 Main Street
Watertown, MA 02472
Tel: 617-379-6669
jordana@jrglegal.com

Dated: August 11, 2020

**<u>Certificate of Service</u>**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on August 11, 2020.

<u>/s/ Richard D. Vetstein</u>