# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

MARIE BAPTISTE, MITCHELL MATORIN, and JONATHAN DAPONTE,

Plaintiffs,

v.

MIKE KENNEALY, in his official capacity as Secretary of the EXECUTIVE OFFICE OF HOUSING AND ECONOMIC DEVELOPMENT, and CHARLES BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,

Defendants.

C.A. No. 1:20-CV-11335-MLW

## DEFENDANTS' REPLY TO PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS, OR IN THE ALTERNATIVE, TO STAY

Defendants Secretary of the Commonwealth of Massachusetts's Executive Office of

Housing and Economic Development ("EOHED") and Governor of Massachusetts (collectively,

"Commonwealth") respectfully submit this Reply Memorandum in further support of

Defendants' Motion to Dismiss, or in the Alternative, to Stay the proceedings in this case

("Motion").[1] As discussed below, Plaintiffs' efforts to have this Court issue declarations on the

---

[1] Subsequent to the filing of Defendants' Motion, the Plaintiffs filed a First Amended Complaint ("Amended Complaint"). This Reply will address, in Sections II-IV below, the issues of abstention raised in Defendants' original Motion, but will do so in the context of the claims as stated in the Amended Complaint, and not the (now inoperative) original complaint. *See Connectu LLC v. Zuckerberg*, 522 F.3d 82, 94 (1st Cir. 2008) (amended complaint filed as of right "replace[s] the original complaint in its entirety"). This said, the Amended Complaint does not add any substantive allegations that fundamentally change the nature of the abstention analysis before the Court, and the still-active abstention-based portion of the Motion to Dismiss, or in the Alternative to Stay, the original Complaint constitutes part of the Commonwealth's Fed. R Civ. P. 12 and 15 response to the Amended Complaint. In addition, as requested in the Court's August 13, 2020 Order ("Order"), this Reply will "address whether the Amended Complaint renders [Defendants'] request to dismiss moot." (Order, § 1(b)(i)). *See* Section I below. As permitted by the Order, § 1(b)(iii), Defendants will be filing a renewed motion to

constitutionality of a Massachusetts statute while a constitutional challenge to the same statute

(filed earlier and at a more advanced stage now) is pending in state court should be rejected, and

the Court instead should exercise its broad discretion to abstain from issuing declaratory relief, at

least at the present time. Accordingly, the Court should either enter a stay of this action or

dismiss the action in its entirety, without prejudice to Plaintiffs' assertion of their claims either in

State court or in this Court after the pending State court proceeding has concluded.

In addition or in the alternative, this Court should dismiss particular counts of the

Amended Complaint for the reasons described herein and described in the Commonwealth's: (1)

original Motion to Dismiss, Or, In the Alternative, to Stay (Dckt. 26); (2) Memorandum in

Support of original Motion to Dismiss or Stay (Dckt. 27); (3) Motion to Dismiss Counts II, III,

and V of the Amended Complaint (filed herewith); and (4) Memorandum in Support of Motion

to Dismiss Counts II, III, and V of the Amended Complaint (filed herewith).

## I.      Grounds for Dismissal Raised in the Commonwealth's Motion Other Than Abstention

### A.      Eleventh Amendment.

Because Plaintiffs' new pleading names Massachusetts Executive Branch officials in

their official capacities rather than (as originally pleaded) the Commonwealth and EOHED, the

Commonwealth will no longer assert that Plaintiffs' claims are wholly barred under the Eleventh

Amendment. Plaintiffs, however, continue to pursue monetary relief as "just compensation"

under the Takings Clause, notwithstanding the Commonwealth's assertion of the Eleventh

---

dismiss the Amended Complaint, addressing grounds for dismissal other than the abstention issues raised
in Defendant's original Motion and discussed here. That renewed motion constitutes the other part of the
Commonwealth's response under Fed. R. Civ. P. 12 and 15 to the Amended Complaint.

Amendment in defense of that claim.  *See* Am. Complaint (Dckt. 58), ¶¶ 84, 86.[2]  Accordingly,

the Commonwealth's original Motion is not moot with respect to its assertion that Count V must

be dismissed insofar as it seeks monetary damages.  *See* Defendants Memorandum of Law in

Support of Defendants' Motion to Dismiss or, in the Alternative, to Stay (Dckt. 30) ("Defs.

Memo") at 6-7.  On this point (which Plaintiffs have not, and cannot, rebut), the Commonwealth

cites two additional cases, decided recently, where Circuit Courts have held that Takings claims

are barred by the Eleventh Amendment, notwithstanding the Supreme Court's decision in *Knick*

*v. Township of Scott, Pa.*, 139 S.Ct. 2162, 2176 (2019).  *See Williams v. Utah Dept. of*

*Corrections*, 928 F.3d 1209, 1214 (10th Cir. 2019); *Bay Point Prop., Inc. v. Miss. Transp.*

*Comm'n*, 937 F.3d 454, 456-57 (5th Cir. 2019).

        **B.**       **Standing**

                1.       <u>Standing as to Count II</u>.

Count II of the both the original Complaint and the Amended Complaint alleges that the

Legislature's Act Providing for A Moratorium on Evictions and Foreclosures During the

COVID-19 Emergency, codified at Mass. St. 2020, c. 65 ("Act") impermissibly restrains

commercial speech in violation of the First Amendment insofar as it states:

> "Notwithstanding chapter 186 or chapter 239 of the General Laws or any other
> general or special law, rule, regulation or order to the contrary, a landlord or
> owner of a property shall not, for the purposes of a non-essential eviction for a
> residential dwelling unit: (i) terminate a tenancy; or (ii) send any notice, including
> a notice to quit, requesting or demanding that a tenant of a residential dwelling
> unit vacate the premises."

Mass. St. 2020, c. 65, § 3(a).

---

[2]      Following a conference among counsel pursuant to Local Rule 7.1(a)(2), counsel for the
Plaintiffs confirmed by e-mail that the Plaintiffs continue to assert a right to pursue monetary
damages under the Takings Clause in this Court.

In its original Memorandum in Support of the Motion (Dckt. 27), the Commonwealth argued that Baptiste and Matorin lacked standing to assert this claim because they affirmatively alleged they had already sent all notices necessary to terminate the tenancies at issue and, thus, they lacked an injury in fact arising from § 3(a) of the Act. *See id*. at pp. 7-10. In the Amended Complaint, however, new Plaintiff DaPonte asserts that his tenants have ceased paying rent and that he "desires to, but is prohibited from, serving a 14-day Notice to Quit for Non-Payment of Rent." *See* Am. Complaint (Dckt. 58), ¶¶ 48, 51; Affidavit of Jonathan DaPonte (Dckt. 60) at ¶¶ 4, 7, 8. Similarly, original Plaintiff Matorin now claims in the Amended Complaint that one of his tenants has voluntarily left the premises he owns, and the brother of his remaining tenant has moved in without his permission. *See* Amended Complaint (Dckt. 58) at ¶ 46. Matorin states that he "understands" that he must serve a separate notice to quit and a separate summary process summons and complaint on his tenant's brother in order to evict the brother. *See id*. at ¶ 46; Supplemental Affidavit of Mitchell Matorin (Dckt. 59) at ¶ 3. But, Matorin alleges, he is prevented by § 3(a) of the Act from serving any new notice to quit and summons and complaint. *See* Amended Complaint (Dckt. 58) at ¶ 46; Matorin Supp. Aff. (Dckt. 59) at ¶ 3.

Setting aside any question about the legal accuracy of Matorin's "understanding" that it is necessary to serve a new notice to quit and a new summons and complaint in order to evict the brother, the Commonwealth concedes that Matorin now has standing to pursue Count II. The Commonwealth also concedes that DaPonte has standing to pursue Count II. On the other hand, however, Baptiste still lacks standing to pursue Count II. Nothing in either the Amended Complaint or Baptiste's Supplemental Affidavit (Dckt. 61) has cured Baptiste's lack of standing to pursue this claim; she instead continues to allege that she has served all notices necessary to terminate the relevant tenancy. *See* Amended Complaint (Dckt. 58) at ¶¶ 33-34; Supp. Affidavit

of Marie Baptiste (Dckt. 61) at ¶ 2.  Because, however, DaPonte and Matorin have standing to pursue Count II of the Amended Complaint, the standing issue is mooted as to Count II, and the Court need not consider whether Baptiste also has such standing to bring this claim.  *See Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 972 (1st Cir. 1993) (one plaintiff with standing is sufficient).

2.      Standing as to Count III.

The same cannot be said, however, as to Count III.  Accordingly, the Commonwealth continues to press its original Motion insofar as it seeks dismissal of Count III pursuant to Fed. R. Civ. P. 12(b)(1) due to lack of standing.  In Count III, Plaintiffs claim that the regulations promulgated by EOHED pursuant to the Act (400 Code Mass. Regs. § 5.01, *et seq.*) (the "Regulations") violate the Free Speech Clause insofar as they "compel[] individuals to speak a particular message" in the form of the specific disclosures required by the Regulations in the event that residential landlords choose to send their tenants "written notice of each missed rent payment" during the effective period of the Act.  *See* Amended Complaint (Dckt. 58) at ¶ 72, quoting *Nat'l Inst. of Family & Life Advocates v. Becerra*, 138 S. Ct. 2361, 2371 (2018).  They argue that "[w]ith all non-payment notices to quit prohibited, the [Regulations] mandate a government approved notice and language for any rental property owner who *opts* to send a 'missed rental notice' to a tenant."  *Id.* at ¶ 71 (emphasis supplied).

There remains, however, a glaring omission in the Amended Complaint.  The Plaintiffs (including DaPonte) at no point allege, in any way, that they are required to, intend to, or desire to send any "missed rental notice" to their tenants.  Indeed, Count V of the Amended Complaint itself refers to "any rental property owner who *opts* to send a 'missed rental notice,'" *id.* at ¶ 71 (emphasis supplied), suggesting that Plaintiffs view the Regulations as offering landlords a

choice to send the notices – and not as imposing a requirement that they do so.[3] This is a sensible viewpoint, since § 5.03(2) of the Regulations does not contain strictly mandatory language regarding the sending of notices of rent arrearages, instead referring to disclosure requirements "*[i]f* a landlord delivers such a notice."[4] 400 Code Mass. Regs. § 5.03(2) (emphasis added). To be sure, the regulations state that landlords "should" send a written notice of each missed rent payment to residential tenants, in order to "minimize the risk that a tenant will face eviction for an accumulated nonpayment of rent once [the moratorium] expires, and to promote the prompt resolution of such situations without resorting to the court system." *Id.* But the regulations impose no penalty on landlords who fail to do so, nor do they contain any enforcement mechanism to compel landlords to send such notices. *See generally id.* The regulations are thus hortatory, rather than strictly mandatory, with respect to notices of missed rent. Moreover, Plaintiffs' Requests for Relief contain no request for a declaration that they may

---

[3]    The Amended Complaint in fact emphasizes what the Plaintiffs view as the optional nature of the Regulations' notice of missed rent provision in several allegations. *See id.* at ¶ 40 (stating that Baptiste has "considered" sending a "Notice of Rent Arrearage form," but that "she objects to sending this form because it provides [Internet] links to her tenants . . . , which she believes would undermine her attempts to ensure that her tenants pay the rent"); ¶ 45 (stating that Matorin has "considered" sending a "Notice of Rent Arrearage form," but "objects to sending this form because it informs his tenant that he cannot be evicted and it provides [Internet] links to his tenants . . . , which he believes would undermine his attempts to ensure that his tenants pay the rent owed, or vacate the premises voluntarily"); ¶ 52 (stating that DaPonte "considered" sending a "Notice of Rent Arrearage form" but "objects to sending this form because it provides [Internet] links to his tenants[,] . . . , which he believes would undermine his attempts to ensure that his tenants pay the rent owed, or vacate the premises voluntarily"). In addition, the Regulations only supply disclosure language that must be inserted if residential landlords send such a notice during the effective period of the Act. *See id.* § 5.03(2). EOHED has not, however, promulgated an overall form for such notices of "rent arrearage." *See generally* 400 Code Mass. Regs. § 5.01 *et seq.*

[4]    Moreover, the Act states plainly, "Nothing in this section shall relieve a tenant from the obligation to pay rent or restrict a landlord's ability to recover rent." Mass. St. 2020, c. 65, § 3(f). And, Section 5.03 of the Regulations was promulgated pursuant to the very next provision in the Act, which states, "The [EOHED] shall issue emergency regulations as necessary to implement this section." *Id.* § 3(g). Accordingly, the Regulations cannot be construed as creating a requirement that could "relieve a tenant from the obligation to pay rent or restrict a landlord's ability to collect rent." *Id.* at § 3(f).

send written notices of missed rent to their tenants *without* including the disclosure language required by the Regulations.  *See* Am. Complaint (Dckt. 58) at pp. 23-25.

It is thus plain that all three Plaintiffs regard the Regulations' missed-rent notice provision as providing them with an *option* to send a missed-rent form – not as requiring that they must do so.  Moreover, the three Plaintiffs have never identified any reason why they would want to send such a form, or any reason why their failure to do so might result in some detriment to their own rights.  They do not assert (nor can they) that the Regulations impose any notice requirement with which they must comply to preserve their rights to collect past-due rent. Because Plaintiffs regard sending a missed-rent notice as merely an *option*, and because the Regulations do not, strictly speaking, require the sending of missed-rent notices containing the language that plaintiffs find objectionable, they assert no viable allegation that they have suffered any actual injury (or even a hypothetical one) arising from the Regulations' disclosure requirement.  *See Reddy v. Foster*, 845 F.3d 493, 499 (1st Cir. 2017) (plaintiff's injury "must be concrete and particularized and actual or imminent, not conjectural or hypothetical") (internal quotations omitted).  Thus, Count III of the Amended Complaint must be dismissed with prejudice, pursuant to Fed. R. Civ. P. 12(b)(1).  *See* Defs. Memo (Dckt. 27) at pp. 7-8, 10-11.

### C.    Prior Pending Action

The Amended Complaint also has done nothing to change the fact that Plaintiff Matorin is attempting to press a "takings" claim concerning precisely the same parcel of real property in two different and simultaneously pending actions – one in this Court and the other in State Court. Accordingly, the Commonwealth continues to press its argument that Count V of the Amended

Complaint should be dismissed as to Matorin under the prior-pending action doctrine.  *See* Defs.

Memo (Dckt. 27) at p. 11, n.8.

## II.      Plaintiffs' Arguments Against *Wilton* Abstention Should Be Rejected.

### A.      Strict Parallelism Between the Federal and State Cases Is Not Required for *Wilton* Abstention to Apply.

Plaintiffs do not contest that, because all their claims are brought under the Declaratory

Judgment Act, 28 U.S.C. § 2201, this Court has "broad" and "substantial" discretion to dismiss

or stay their claims, even if their complaint otherwise satisfies jurisdictional requirements.

*Wilton v. Seven Falls Co.*, 515 U.S. 277, 286-88 (1995).  Instead, they first argue that *Wilton*

abstention is unwarranted because the federal and state court cases are allegedly not "parallel."

*See* Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss ("Pls. Opp.")

(Dckt. 55) at 5-14.  In raising this issue, Plaintiffs reference *Certain London Mkt. Reinsurers,*

2019 WL 1222758 (D. Mass. 2019), which analyzed, for purposes of both *Colorado River* and

*Wilton* abstention, the threshold question whether the federal "suit is parallel to the State Court

Case."  *Id*. at *7.  Although the Commonwealth asserts that this case is indeed parallel to the

state-court action, *see* pages 14-14, below, a number of Circuit Courts have expressly held that

strict "parallelism" between the state and federal cases is *not* required for *Wilton* abstention to

apply.  *See*, *e.g*., *Aetna Cas. & Sur. Co. v. Ind-Com Elec. Co.,* 139 F.3d 419, 423 (4th Cir. 1998)

("There is no requirement that a parallel proceeding be pending in state court before a federal

court should decline to exercise jurisdiction over a declaratory judgment action.")  Rather, "the

existence or non-existence of pending parallel state proceedings is but one factor for a district

court to consider" in addressing *Wilton* abstention.  *Reifer v. Westport Ins. Corp*., 751 F.3d 129,

144 (3d Cir. 2014) (citing Circuit Court decisions from the Fourth, Fifth, Eighth, Ninth, and

Tenth Circuits); *Arbella Protection Ins. Co. v. Regan Heating and Air Cond'g, Inc.*, 2016 WL

3248256 at *2 (D.R.I. 2016) ("[t]he lack of a parallel action does not mean that abstention under *Wilton/Brillhart* is precluded") (internal quotations omitted). This is not to say that the degree of similarity or overlap between the state and federal cases is irrelevant to the abstention analysis. But these considerations merely *inform* application of the first *Wilton* "factor" ("the scope of the pending state court proceeding and the nature of defenses open there," *Wilton*, 515 U.S. at 283), and a rigorous finding of "parallel" cases should not be viewed as a prerequisite to *Wilton* abstention. Thus, Plaintiffs lengthy analysis of parallelism in the context of *Wilton* is misplaced.

**B.    The Absence of State Law Claims in the Present Case Does Not Preclude *Wilton* Abstention.**

Next, Plaintiffs attempt to place dispositive weight on the fact the present case does not involve state-law claims, arguing that "*Wilton* established only that abstention may be appropriate . . . where there are no issues of federal law and the same state law issues are present in both state and federal court." Pls. Opp. at 17. While the Commonwealth agrees that the facts of *Wilton* involved only state-law claims, it is decidedly not the case that a court's discretion to address Declaratory Judgment Act claims is limited to situations where the federal court action raises only state-law claims. Instead, "[w]hen considering declaratory judgment actions, many courts, after weighing all the pertinent factors, have deemed it proper to abstain from jurisdiction even where a federal question exists." *Machat v. Sklar*, 1997 WL 599384, at *4 (S.D.N.Y. 1997) (citing cases); *see also Cruz v. Melecio,* 204 F.3d 14, 25 (1st Cir. 2000) (presence of federal issue, while weighing against abstention, was "substantially outweighed by compelling interests of fairness, comity, and sound judicial administration"); *Managing Directors' Long Term Incentive Plan v. Boccella*, 2015 WL 2130876, at *6 (S.D.N.Y 2015). Indeed, as the First Circuit has specified, a district court should exercise maximum restraint when addressing requests for declaratory relief on *federal constitutional* questions. *Ernst & Young v. Depositors*

*Econ. Prot. Corp.*, 45 F.3d 530, 535 (1st Cir. 1995); *El Dia, Inc. v. Hernandez Colon,* 963 F.2d

488, 494 (1st Cir. 1992). Thus, contrary to Plaintiffs' assertions, the absence of state-law claims

in the present action does not preclude the Court from exercising its broad discretion to abstain

from hearing Plaintiffs' declaratory judgment claims.

> **C.      The Court Should Refrain from Issuing the Requested Declarations on
> Constitutional Issues Because it is Not "Absolutely Necessary" That It Do So.**

As the Commonwealth discussed in its principal brief, the law is clear both that courts

should be "chary about adjudicating constitutional rights by means of declaratory judgment

actions" and that "[u]ncertain questions of constitutional law should be addressed only when

absolutely necessary." *El Dia, Inc*., 963 F.2d at 494 ("needless adjudication of constitutional

questions should be avoided"); *see also Ernst & Young*, 45 F.3d at 535. In confronting this

precedent, Plaintiffs first quibble that these First Circuit cases were not about "abstention *per

se,*" but rather were decided more on ripeness grounds. Pls. Opp. at 12. Regardless of whether

this is accurate, Plaintiffs acknowledge (*see id*.) that both *El Dia, Inc*. and *Ernst & Young*

addressed the scope of a district court's *discretion* to hear federal constitutional claims under the

Declaratory Judgment Act – which is precisely the question the Court is confronted with here.

Even though the trial judge in the State Court Case[5] may issue an injunction that would

bar further enforcement of the Act, Plaintiffs nonetheless urge the Court to plow forward with

addressing Plaintiffs' federal constitutional claims because "it is certain that the Commonwealth

will immediately appeal" such a ruling and "will likely obtain a stay while the Appeals Court or

more probably the Supreme Judicial Court hears the case." Pls. Opp. at 13. While Plaintiffs are

likely correct on the first of their assumptions, the second assumption – that a stay would in fact

---

[5]      Capitalized terms have the same meaning as they did in Defendants Memorandum of Law in
Support of Defendants' Motion to Dismiss, or in the Alternative to Stay, unless otherwise indicated.

be issued, as opposed to just sought – is pure speculation. Plaintiffs themselves deny that the Commonwealth would be legally entitled to such a stay (Opp. at 13, n. 3), and there is no way to reliably predict how the Superior Court would exercise its discretion in this regard, or how the Massachusetts Appeals Court would exercise its own discretion in the event that a denied stay request were renewed before it. *See* Mass. R. App. P. 6(a)(1); *see also Planned Parenthood League of Mass. v. Operation Rescue*, 406 Mass. 701, 709 (1990) (traditional Massachusetts preliminary-injunction standard applicable to stay request). Thus, in deciding whether it is "absolutely necessary" to hear the pending federal constitutional claims, *El Dia, Inc*., 963 F.2d at 494, the Court should not place weight on this State court "stay" contingency.

Moreover, even if the issuance of a preliminary injunction were temporarily stayed, or even if the Superior Court were to deny the State Court Plaintiffs' request for a preliminary injunction, this Court still should abstain from deciding the federal constitutional issues in this case, at least until there has been appellate review of the Superior Court's now-pending preliminary injunction decision. Under Massachusetts procedural law, parties aggrieved by interlocutory orders of a state trial court judge, including orders denying or granting a motion for preliminary injunction by a trial court, may immediately appeal such orders to a Single Justice of the Massachusetts Appeals Court. *See* Mass. Gen. Laws c. 231, § 118, ¶¶ 1-2; *E.H. Perkins Const., Inc. v. Town of Lincoln*, 78 Mass. App. Ct. 208, 209 (2010); *Ashford v. Mass. Bay Transp. Authority*, 421 Mass. 563, 566 (1995). Upon the filing of such an appeal, the respondent is presumptively required to respond very promptly – within seven (7) days, unless the court orders otherwise. Mass. Appeals Court Rule 20.0(c). The Single Justice then has "broad" power to review a trial court's preliminary injunction ruling, which notably "includes the power to grant an injunction that has been denied in the Superior Court." *Ashford*, 421 Mass. at 566.

**III.    *Colorado River* Also Provides Strong Grounds for Abstention**

    **A.    The Question of Parallelism Should Be Determined Based Upon When the Federal Complaint Was Filed.**

Plaintiffs cannot dispute that, at the time that the present case was filed, (a) the claims raised in the State Court Case and the federal action were identical, (b) the relief requested was identical, (c) counsel representing the Plaintiffs were identical, and (d) the only difference between the two cases was that the federal action added a single new plaintiff.  In its Memorandum of Law in support of its Motion to Dismiss, the Commonwealth cited a number of cases holding that appropriate point of reference for determining whether a state and federal court are "parallel" for purposes of considering abstention is, in fact, the time that the federal action is filed.  *See* Defs. Memo at 19.  Contending that this is a "gotcha" argument that "elevates form over substance," Plaintiffs first cite *OHI Asset (CT) Lender, LLC v. Woodland Manor Improvement Ass'n*, 687 F. Supp. 2d 12, 22 (D.R.I. 2010), for the proposition that "the First Circuit has not indicated at which point in time [the] determination is to be made."  Pls. Opp. at 9.  *OHI Asset*, however, is unhelpful to Plaintiffs, because in that case the District Court itself actually concluded that "the [abstention] determination should be made as of the time the federal action was filed," 687 F. Supp. 2d at 22, explaining that the opposite conclusion (that parallelism "should be made as of the date the federal court confronts the issue") would "appear to be a significant departure from the approach which most courts have taken in applying *Colorado River* abstention," as well as that "[t]he First Circuit appears not to have [taken this approach] when considering *Colorado River* abstention."  *Id*. at 22-23.

Plaintiffs move on to cite several cases that purportedly stand for the proposition that the question of parallelism is "properly evaluated as of the time of the abstention."  Opp. at 9.  But these cases do not actually either address the issue or undercut the precedent cited by the

Commonwealth. Specifically, in *Baskin v. Bath Tp. Bd. of Zoning Appeals*, 15 F.3d 569, 571-72 (6th Cir. 1994), a "precisely parallel state court action" was filed the day *after* the District Court had issued its abstention decision. The Circuit Court determined that this subsequent state-court action was not relevant to the abstention question, as "no parallel state action existed at the time the district court abstained." *Id*. at 572. This general statement, however, did not address the proper point of reference for examining parallelism when a state court claim *does* exist at the time that the federal action is filed (as is the case here). Similarly, in *Crawley v. Hamilton County Commissioners*, 744 F.2d 28 (6th Cir. 1984), the court came to the conclusion that a state court action that was never parallel in the first place – *i.e.*, was not in fact parallel at the time of the filing of the federal case – cannot thereafter be deemed parallel by hypothesizing ways in which parties and claims could theoretically be added. *Id*. at 31. Here, of course, no hypothesizing is needed, as the claims in the State Court Case and the federal action were in fact identical at the time that the federal action was filed. Finally, plaintiffs have cited *Cruz v. Melecio*, 204 F.3d 14 (1st Cir. 2000), a case that does not even address the question at hand. *Id*. at 24. In short, none of these cases call into question the holdings of the decisions cited by the Commonwealth that the appropriate point of reference for evaluating parallelism is when the federal complaint was filed.

It bears emphasis that the "date of the federal filing" point of reference furthers the underlying goals of both *Colorado River* and other abstention doctrines, because it discourages litigants from engaging in expedient manipulations of their state or federal court claims after filing their federal suit, in ways that are meant to avoid impending abstention arguments. Here, the federal action was filed after the State Court Plaintiffs had received the "very disappoint[ing]" (in the words of their lead counsel) news that the Supreme Judicial Court would

not hear their claims, and that the State Court case would instead be heard initially in Superior Court. *See* Ex. B to Defs' Memo. Faced with the likely prospect of federal court abstention given their original pleading, the State Court Plaintiffs then stripped their federal claims out of the State Court Case. But all this was in furtherance of a clear effort to forum-shop their constitutional claims, which abstention doctrines discountenance. *See Cruz*, 204 F.3d at 24; *Government Employees Ins. Co. v. Dizol*, 133 F.3d 1220, 1225 (9th Cir. 1998). The "date of the federal filing" principle discourages this type of maneuvering, and it is sensible to apply it here.

**B.  Abstention Would Still Be Appropriate Even if the Court Were to Consider the Question of Parallelism as of the Current Date**

Plaintiffs understandably focus their discussion of "parallel" actions on a comparison of the state and federal suits as of the present date, and not the date that the federal complaint was filed, when the parallelism was almost complete. In doing so, they point out that the present action contains federal constitutional claims that have now been voluntarily dismissed from the State Court Case, and that the federal action includes two additional plaintiffs. Pls. Opp. at 6-7. Plaintiffs' argument, however, must first be considered in light of the First Circuit's "broad" construction of the term "parallel proceedings," *see Nat'l Union Fire Ins. Co. of Pittsburgh v. Marine Terminal, Inc*., 2015 WL 3952766 at *3 (D. Mass. 2015), under which "perfect identity" of parties or issues is not required. *Villa Marina Yacht Sales, Inc. v. Hatteras Yachts*, 947 F.2d 529, 533 (1st Cir. 1991). Here, there is overlap in the identity of the plaintiffs in both cases (Plaintiff Matorin was an original plaintiff in each), and in the issues presented. Specifically, Plaintiffs' parallel "takings" claims are functionally identical to each other. *See* Part I.C *supra*.

Moreover, any assessment of Plaintiffs' argument should take into account that the current Plaintiffs in the federal court action *could have* joined the declaratory judgment action under Mass. Gen. Laws c. 231A filed in state court, and could have raised the same issues in that

suit (just as one of the Plaintiffs in fact *did*). Thus, "an identity of parties is not required for

proceedings to be considered parallel" where there is "an available procedural vehicle in state

court by which the federal plaintiff, even if not a party to the state action, can resolve the issues

raised in the federal action."[6] *Flectat Ltd. v. KASL Seabreeze, LLC,* 257 F.Supp.3d 152, 157 (D.

---

[6]     The Court has separately inquired, *sua sponte*, about the possibility of abstention under *Younger v. Harris*, 401 U.S. 37 (1971). *See* Transcript (Dckt. 53) at pp. 11-12. Although the *Younger* doctrine does not fit this case perfectly after that doctrine has been narrowed by the Supreme Court in *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 73 (2013), it does involve pending state court actions and directly implicates the administration of the State's trial court department. Accordingly, the core principles underlying *Younger* abstention are still fully relevant. "*Younger* rests upon basic notions of federalism and comity, and also on a related desire to prevent unnecessary duplication of legal proceedings." *Mass. Delivery Ass'n v. Coakley*, 671 F.3d 33, 40 (1st Cir. 2012). A federal court may abstain under *Younger* in favor of a pending state proceeding when the pending state proceeding falls within one of three categories: (1) a criminal proceeding, (2) a civil enforcement proceeding, or (3) a "civil proceeding involving certain orders that are uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint*, 571 U.S. at 73, *quoting New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 367-68 (1989). The third category, "civil actions involving 'administration of a State's judicial system,'" includes "a court's contempt proceedings, [] and the ability to enforce a valid state-court judgment." *Mass. Delivery Ass'n*, 671 F.3d at 41, *quoting Juidice v. Vail*, 430 U.S. 327, 335 (1977) and citing *Pennzoil Co. v. Texaco, Inc.*, 481 U.S. 1, 13 (1987). Presently before the Court is a new, unique circumstance where Plaintiffs are challenging the constitutionality of a State emergency statute that temporarily affects the jurisdiction of State courts normally hearing summary process cases. *See* St. 2020, c. 65 § 3. Pursuant to the Act, the State trial courts that have jurisdiction over summary process cases have not only refrained from accepting new filings; they also have essentially entered stays in pre-existing cases concerning "non-essential evictions." *See* Affidavit of G. Emil Ward, ¶ 7 (Dckt. 56) (the "existing case-load" of the Housing Court has been "effectively stayed by the Act"). Thus, relief by this Court could possibly interfere with the pending state summary process proceedings that have been effectively stayed pursuant to the Act, by reviving them prematurely and essentially vacating existing State trial court stay orders. In fact, Plaintiff Matorin alleges that he is the plaintiff in a pending summary process case in Housing Court that has effectively been stayed pursuant to the Act. *See* Am. Compl. (Dckt. 58) ¶¶ 43-44. And Plaintiff Baptiste alleges that the Act has prevented her from filing a summary process action that she would like to commence but cannot, because the relevant court will not accept the filing. Id. ¶ 35. Like a state court contempt proceeding or the ability to enforce a state court judgment, as referenced in *Sprint*, the Act involves the administration of the Commonwealth's judicial system. The primary difference between the classic *Younger* abstention case and this one is that, typically, a *Younger* plaintiff is in federal court attempting to, metaphorically, shut the State courthouse's door to an action that the federal plaintiff fervently wishes to avoid. Here, in contrast, Plaintiffs are trying to pry open a courthouse door that has temporarily been closed (though only to eviction actions) by the Massachusetts Legislature. But the offense to general principles of comity and federalism is the same whether a federal court intervenes in a State court action by trying to shut it down or by trying to force multitudes of them to proceed. Moreover, although the pending summary process actions with which this case may interfere are not actions in which the Plaintiffs could likely press the federal claims they have asserted here, a case *is* pending in the State's Superior Court in which they absolutely could press those federal rights – as evidenced by the fact that Plaintiff Matorin originally brought all of his current federal claims in that

Mass. 2017) (internal quotations omitted).  The court in *Flectat* noted that the Massachusetts Declaratory Judgment Act, Mass. Gen. Laws, c. 231A, presented just such a vehicle in that case – a point that applies with special force here, because the State Court Plaintiffs also pursued their claims under chapter 231A.  *Id.*; *see also Nat'l Union Fire Ins. Co. of Pitt.*, 2015 WL 3952766 at *4.  This same logic should apply when considering the overlap of issues in this case, where it is indisputable that the Plaintiffs could have raised all of their federal constitutional claims in state court, and where, in fact, Matorin *did* initially pursue these claims in the State Court Case.  This is enough to satisfy any threshold requirement that the two actions be "parallel."  *Cf. American Nat. Fire Ins. Co. v. Hungerford,* 53 F.3d 1012, 1017 (9th Cir. 1995) (in discussing parallel nature of actions, the Court noted that "'the state does have a procedure for obtaining a declaration of the rights . . . of an interested party seeking a declaratory judgment…Thus, [the plaintiff] could have presented the issues that it brought to federal court in a separate action to the same court that will decide the underlying [state] court action.'") (*quoting Allstate Ins. Co. v. Mercier*, 913 F.2d 273, 278 (6th Cir. 1990)), *overruled on other grounds by Gov't Emps. Ins. Co. v. Dizol*, 133 F.3d 1220 (9th Cir. 1998).

---

action.  Additionally worth noting is that two more of *Younger*'s factors are readily satisfied here.  First, the stays entered in pending eviction actions pursuant to the Act implicate important state interests, as does Plaintiff Matorin's pending Superior Court case.  *See Sirva Relocation, LLC v. Richie*, 794 F.3d 185, 192-93, 196, citing *Middlesex Cty. Ethics Comm'n v. Garden State Bar Assoc'n*, 457 U.S. 423, 432 (1982)).  (Admittedly, the Commonwealth concedes, the latter of these two citations is a poor fit under *Sprint*.)  Second, the Plaintiffs have an adequate opportunity to raise federal claims in the pending Superior Court proceeding.  *See id.*  Undoubtedly, this case is not on all fours with *Sprint*'s articulation of *Younger* abstention, but *Sprint*'s third category could reasonably be extended to encompass it, and in any event, *Younger*'s animating principles strongly suggest abstention would be appropriate under any applicable doctrine – or under a combination of doctrines, *see* n.9, *infra* – in this unique situation wherein the abstention question before the Court is one of first impression.

**C.     Plaintiffs' Weighing of the *Colorado River* Factors is Flawed.**

In turning to the individual *Colorado River* factors, Plaintiffs first argue that this case does not present the risk of "piecemeal litigation," because the "state court will not consider the same issues as this Court," and because events in the State Court cannot possibly "obviate the need for this Court to resolve the federal constitutional issues present here."  Pls. Opp. at 19. Neither of these arguments has merit.  First, it is undeniable that the Takings Clause claim (Count V) in this case under the Fifth Amendment presents exactly the same issues as the takings claim brought in the State Court Case under art. 10 of the Massachusetts Declaration of Rights. Simultaneous consideration of at least the competing takings claims indeed raises the specter that the two courts will be "duplicating efforts and possibly reaching different results," which exactly meets the definition of "piecemeal litigation" cited by Plaintiffs themselves in *Standard Fire Ins. v. Gordon*, 376 F. Supp. 2d 218, 233 n. 13 (D.R.I. 2005).  Moreover, as discussed above, the Superior Court may strike down the Act as unconstitutional (which the State Court Plaintiffs have asked it to do), which would mean that this Court need not address Plaintiffs' federal constitutional claims, at least not at the present time.[7]

Plaintiffs next argue that the *Colorado River* factor speaking to the relative timing of the State Court Case and the federal court action "is of no import in the abstention analysis," because

---

[7]      Plaintiffs reference *Guiney v. Roache,* 833 F.2d 1079, 1082 (1st Cir. 1987) as supporting their argument that a potential ruling in the State Court Case would not obviate the need for this Court to address their federal constitutional claims.  As Plaintiffs recognize, however, that case principally involved *Pullman*  (not *Colorado River*) abstention, and the Court of Appeals for the First Circuit ruled that the mere fact that a state court might resolve an issue on state constitutional grounds, including a "parallel" state constitutional provision, does not mean that the federal court can simply dismiss the federal claims on *Pullman* abstention grounds.  *Id.* at 1082-83.  More specifically, the *Guiney* Court determined that the case did not represent a situation where there was an "unsettled relationship between the state constitution and a statute," which *would* warrant *Pullman* abstention.  *Id.* at 1082 (*quoting Harris County Comm'rs Court v. Moore*, 420 U.S. 77, 84 (1975)); *see generally* Defs. Memo, p. 14, n. 11 (citing *Pullman* abstention as an additional basis for abstention in this case, an argument the Commonwealth

"nothing of substance has occurred in either case." Opp. at 20. This is not so. In the State Court Case, the plaintiffs' motion for preliminary injunction has been fully briefed and argued (weeks ago), and is awaiting a decision by the Superior Court. It is substantially further along than the present case, where the Plaintiffs have only recently (on August 11, 2020) filed the now-operative complaint in this matter, adding new plaintiffs and new defendants and modifying their substantive allegations and requests for relief. Thus, the Commonwealth disagrees that "the order in which the forums obtained jurisdiction" here should be given minimal weight. *Rio Grande Cmty. Health Ctr. v. Rullan*, 397 F.3d 56, 71 (1st Cir. 2005).

Lastly, Plaintiffs dispute that there is a "vexatious and contrived" quality to the federal litigation, noting that "Plaintiff Matorin dismissed the federal claims in the state court in order to join with Plaintiff Baptiste, who was filing . . . in this Court." Pls. Opp. at 21. Plaintiffs suggest that, if Plaintiff Baptiste had simply filed her claims alone in federal court, "there would be no basis for arguing that this case was 'vexatious or contrived.' *Id*. This argument suffers from several flaws, not the least of which is that it misstates the actual order of events. Plaintiff Matorin did not "join with Baptiste" after the federal action was filed; rather Matorin and Baptiste were both named plaintiffs in the original federal Complaint. Moreover, Matorin did not dismiss his federal claims in state court "in order to join with Plaintiff Baptiste" in this Court; rather, the dismissal of the federal claims in state court came only *after* the present action was filed. At the end of the day, the order of events is clear: On June 24, 2020, Matorin suffered a setback in the State Court Case when the Supreme Judicial Court declined to hear his claims and instead transferred the matter to Superior Court. The very next day, Plaintiffs' lead counsel

---

continues to advance now). The *Guiney* case, therefore, has no direct applicability here even as to *Colorado River*, and it certainly did not involve a situation where, as here, a Court is being separately requested to exercise its broad discretion under *Wilton* to abstain from ruling on requests for declaratory relief in circumstances where a state court is being simultaneously asked to enjoin the statute in question.

expressed "disappoint[ment]" with this ruling and proclaimed that "[w]e have decided to file our federal constitutional claims in Federal Court in Boston . . . ." *See* Ex. B. to Defs. Memo. Almost three weeks later, on July 15, 2020, with his federal claims still pending in State Court, Matorin and Baptiste filed the present action. Thereafter, on the cusp of the Commonwealth responding to the merits of Plaintiffs' federal constitutional claims in state court, Plaintiffs suddenly dismissed those claims – opting to pursue them in federal court. This sequence of events undeniably "raises the discomfiting specter of forum-shopping," *Cruz*, 204 F.3d at 24, and it should figure prominently in the Court's abstention calculus.

## IV.  Abstention is Appropriate Even if This Case Does Not Strictly Fit Into One of the Doctrinal "Pigeonholes."

As the Commonwealth noted in its principal brief,[8] while the discrete abstention "categories do matter," *Rio Grande Cmty. Health Ctr*., 397 F.3d 56, 68 (1st Cir. 2005), "[t]he various types of abstention are not rigid pigeonholes into which federal courts must try to fit cases." *Casiano-Montanez v. St. Ins. Fund Corp*., 707 F.3d 124, 128 (1st Cir. 2013). Rather, they "reflect a skein of considerations that vary with the facts of each case." *Lundborg v. Phoenix Leasing, Inc.,* 91 F.3d 265, 272 (1st Cir. 1996).[9] Here, there is a pending State Court Case that challenges the Act on constitutional grounds and seeks to strike it down in its entirety, just as Plaintiffs are attempting to do in this federal action. The State Court Case was filed earlier than the federal case, is further along procedurally and substantively, and is poised for a

---

[8]     Defs. Memo at 14, n. 11.

[9]     These decisions thus contemplate that a court has discretion, where unique facts so warrant, to abstain in a particular case even if there is no particular identified type of abstention that it fits clearly within. Here, the parties are arguing at length about *Wilton*, *Colorado River*, and *Pullman* abstention, and the Court has separately inquired about *Younger* abstention. *See* n.6, *supra*. Regardless of whether this case fits squarely into any of these doctrinal "pigeonholes," its singular facts seriously impinge on the basic federalism concerns underlying all four of them, and abstention is independently appropriate under the more flexible, non-"pigeon-holed" approach referenced in *Casiano-Montanez* and *Lundberg*.

decision on Plaintiffs' motion for preliminary injunction.  In addition, the State Court Case was filed by a plaintiff also named in the federal action, the parties are represented by the same counsel in both cases, and the claims in both were identical at the time that the federal action was filed ( some overlap indeed continues).  There also is evidence that the federal action was filed in direct response to an adverse development in the State Court action.  Finally, this Court is being asked to strike down a statute that directly relates to the administration of the Massachusetts trial court system, and how that system will operate during a deadly pandemic  Given this confluence of events, whether the Court considers the question through the lens of abstention, its "broad discretion" under the Declaratory Judgment Act, or in light of related "principles of federalism, comity, and sound judicial administration," *Casiano-Montanez*, 707 F.3d at 128, it should decline to hear Plaintiffs' claims based upon the posture of the two cases.

## **<u>CONCLUSION</u>**

For the foregoing reasons, this matter should either be dismissed or stayed on grounds of abstention as to all counts.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Jennifer E. Greaney*
Jennifer E. Greaney (BBO No. 643337)
*Assistant Attorney General*
Pierce O. Cray (BBO No. 104630)
*Senior Appellate Counsel*
Richard S. Weitzel (BBO No. 630303)
*Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2981/2022/2084
Jennifer.Greaney@mass.gov

DATED: August 18, 2020                Pierce.Cray@mass.gov
Richard.Weitzel@mass.gov


## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jennifer E. Greaney*
Jennifer E. Greaney
Assistant Attorney General

Dated:  August 18, 2020