# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MASSACHUSETTS

MARIE BAPTISTE, MITCHELL MATORIN, and JONATHAN DAPONTE,

                Plaintiffs,

        v.

MIKE KENNEALY, in his official capacity as Secretary of the EXECUTIVE OFFICE OF HOUSING AND ECONOMIC DEVELOPMENT, and CHARLES BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,

                Defendants.

C.A. No. 1:20-CV-11335-MLW

## DEFENDANTS' MEMORANDUM IN SUPPORT OF MOTION TO DISMISS COUNTS II, III, AND V OF THE AMENDED COMPLAINT PURSUANT TO RULE 12(b)

Defendants Secretary of the Commonwealth of Massachusetts's Executive Office of Housing and Economic Development ("EOHED") and Governor of Massachusetts (collectively, "Commonwealth") submit this Memorandum in Support of their Motion, filed herewith, to dismiss Counts II, III, and V of the Amended Complaint dated August 11, 2020 (Dckt. 58), pursuant to Fed. R. Civ. P. 12(b)(1) & (6). The Commonwealth is limiting itself in this Memorandum and in the Motion that it supports to non-abstention-based arguments for dismissing Counts II and V, because the Court has directed in its August 13, 2020 Order (Dckt. 64) ("Order") that the instant Motion omit abstention arguments, which have been asserted and argued in other documents described in the instant Motion and fully incorporated therein,[1] and

---

[1] The Commonwealth has an active motion seeking dismissal of the entirety of the Amended Complaint on the abstention grounds, re-asserted in and incorporated into the instant Motion, and

because those other documents include a still-viable request to dismiss Count III for lack of standing, which the Commonwealth continues to press and incorporates herein.

## I.   BACKGROUND

This case was commenced on July 13, 2020 by Plaintiffs Baptiste and Matorin with a Verified Complaint ("Complaint") asserting five causes of action.  (Dckt. 1)  Count II of Baptiste and Matorin's Complaint asserted a claim for violation of the Free Speech Clause of the First Amendment of the United States Constitution,[2] allegedly arising from the Massachusetts Legislature's Act Providing for a Moratorium on Evictions and Foreclosures During the COVID-19 Emergency, effective on April 20, 2020 and codified at St. 2020, c. 65 ("Act").  *See Verified Complaint* (Dckt. 1) at ¶¶ 52-57.  As relevant to Count II, Section 3(a) of the Act provides as follows:

> "Notwithstanding chapter 186 or chapter 239 of the General Laws or any other general or special law, rule, regulation or order to the contrary, a landlord or owner of a property shall not, for the purposes of a non-essential eviction for a residential dwelling unit: (i) terminate a tenancy; or (ii) send any notice, including a notice to quit, requesting or demanding that a tenant of a residential dwelling unit vacate the premises."

Mass. St. 2020, c. 65, § 3(a).  Count V of Baptiste and Matorin's Complaint alleged that the Act amounts to a taking under the Fifth Amendment to the United States Constitution, pursuant to which "just compensation" is due.[3]  *See Verified Complaint* (Dckt. 1) at ¶¶ 69-75.  On their

---

supported by argument in the memoranda referenced and incorporated therein.  Accordingly, the Commonwealth has fulfilled its obligations under Fed. R. Civ. P. 12 and 15 to respond to the Amended Complaint.

[2]    The First Amendment, as made applicable to the States through the Fourteenth Amendment, forbids the abridgment by the government of "the freedom of speech."  Amend. I, U.S. Const.

[3]    The Fifth Amendment states, "nor shall private property be taken for public use, without just compensation."  Amend. V, U.S. Const.

"takings" claim, Baptiste and Matorin sought money damages, declaratory relief pursuant to 28 U.S.C. § 2201, and both a preliminary and permanent injunction.  *See id.* at ¶¶ 74-75 & pp. 20-21, Request Nos. 5, 8-9.

On July 24, 2020, the Commonwealth filed its *Motion to Dismiss, or in the Alternative, to Stay* (Dckt. 26).  In that Motion and in the accompanying Memorandum of Law, the Commonwealth argued, among other things, that: (1) all of Baptiste and Matorin's claims were barred by the Eleventh Amendment to the U.S. Constitution;[4] (2) Counts II and III of the original Complaint were subject to dismissal pursuant to Fed. R. Civ. P. 12(b)(1) because Baptiste and Matorin lacked standing to assert them;[5,6] and (3) this case should be dismissed or stayed in its entirety on abstention grounds.[7]

---

[4]    "The Supreme Court has clearly said that the Eleventh Amendment bars federal suits by citizens against the state or state agencies and that this 'jurisdictional bar applies regardless of the nature of the relief sought.'" *O'Neill v. Baker*, 210 F.3d 41, 47 (1st Cir. 2000), *quoting Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100 (1984).

[5]    Baptiste lacked standing to pursue Count II of the original Complaint because she affirmatively alleged that she had already sent a notice to quit that would have had the effect of terminating the tenancy that is the subject of her complaint, and, moreover, that her tenants had not cured their rent arrearage.  *See* Mass. G.L. c. 186, § 11; *see also Defendants Memorandum of Law in Support of Defendants' Motion to Dismiss* (*Memo. in Support of MTD*) (Dckt. 27) at pp. 7-10; *Verified Complaint* (Dckt. 1) at ¶¶ 32-33, 35; *Affidavit of Marie Baptiste* (Dckt. 11) at ¶¶ 6-9, 10 & *Exhibits* A & B.  As of the date the original Complaint was filed, Matorin also lacked standing to pursue Count II for the same reasons.  *See Memo in Support of MTD* at pp. 7-10; *Verified Complaint* (Dckt 1) at ¶¶ 40-41, *Affidavit of Mitchell Matorin* (Dckt. 4) at ¶¶ 2-3 & *Exhibit* B.

[6]    As to Count III of the Amended Complaint, the Commonwealth continues to press its motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) as articulated in its original Motion to Dismiss (Dckt. 26) and supporting Memorandum (Dckt. 27), which are incorporated herein.  *See Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, Or In the Alternative, To Stay*, which is fully incorporated herein, at Part I.B.2, pp. 4-6.

[7]    The Commonwealth continues to press (and incorporates herein) its abstention arguments in its reply to *Plaintiffs Memorandum in Opposition to Defendants' Motion to Dismiss* (Dckt. 55), which is filed herewith pursuant to the Court's order dated August 5, 2020 at ¶ 3 (Dckt. 50) and its subsequent order dated August 13, 2020 at p. 2, ¶ 1(b) (Dckt. 64).

On August 11, 2020, Baptiste, Matorin, and a new plaintiff, Jonathan DaPonte (collectively, the "Landlords"), filed their First Amended Verified Complaint ("Amended Complaint"). (Dckt. 58). The Amended Complaint cured certain defects that had been raised by the Commonwealth in its original Motion to Dismiss or Stay. Specifically, the Amended Complaint: (1) withdrew the claims for prospective relief originally asserted generally against the "Commonwealth" and EOHED and, instead, brought those counts as official-capacity claims against the Secretary of EOHED and the Governor – thereby curing the primary Eleventh Amendment defect in the complaint;[8] and (2) added a plaintiff (DaPonte) with standing to assert Count II under the Free Speech Clause.[9]

The Amended Complaint describes the basis for the Landlords' Count II as follows:

"The Act prohibits rental property owners and property owners such as the Plaintiffs from (1) terminating any tenancy, or (2) sending 'any notice, including a notice to quit, requesting or demanding that a tenant of a residential dwelling unit vacate the premises.' *See* Act, §3(a)(ii). The Act's ban on the issuance of legal notices such as a notice to quit or notice of tenancy termination is an infringement on Plaintiffs' constitutional right to free speech."

*See* Dckt. 58 at ¶ 66, *quoting* Mass. St. 2020, c. 65, §3(a). The Amended Complaint also asserts the same takings theory described in the original Complaint, requesting declaratory and

---

[8]    Under *Ex Parte Young*, 209 U.S. 123 (1908), "state officers [sued in their official capacities] do not have Eleventh Amendment immunity from claims for prospective injunctive relief." *See Nieves-Marquez v. Puerto Rico*, 353 F.3d 108, 123 (1st Cir. 2003).

[9]    For the reasons explained at pp. 2-3 of the Defendants' Reply to Plaintiffs' Memorandum in Opposition to Defendants' Motion to Dismiss, Or, In the Alternative, to Stay, filed herewith, the Commonwealth does not challenge Plaintiff DaPonte or Matorin's standing to pursue Count III on the revised and new allegations provided in the Amended Complaint. The Commonwealth continues to assert that Baptiste still lacks standing to pursue Count II, since nothing in the Amended Complaint or in Baptiste's Supplemental Affidavit (Dckt. 61) cured her lack of standing. Where, however, DaPonte and Matorin have standing to pursue Count II of the Amended Complaint, the Court need not consider whether Baptiste also has such standing. *See Washington Legal Found. v. Massachusetts Bar Found.*, 993 F.2d 962, 972 (1st Cir. 1993).

injective relief pursuant to the Fifth Amendment, as well as monetary relief. *See Am. Complaint* (Dckt. 58) at ¶¶ 85-86, & pp. 23-24, Req. Nos. 5, 10-12; *see also* footnote 9, *supra*.

## II.     ARGUMENT

### A.     The Applicable Standard.

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009), *quoting Bell Atlantic v. Twombly*, 550 U.S. 544, 570 (1955); *see also Foley v. Wells Fargo Bank, N.A.*, 772 F.3d 63, 71 (1st Cir. 2014) ("A court's goal in reviewing a Rule 12(b)(6) motion is to determine whether the factual allegations in the plaintiff's complaint set forth "a plausible claim upon which relief may be granted."). On a Rule 12(b)(6) motion, the Court must take all the pleaded factual allegations in the complaint as true. *Id.* Stated another way, "[t]o survive a motion to dismiss under Rule 12(b)(6), a complaint must contain sufficient factual matter to state a claim for relief that is both actionable as a matter of law and "'plausible on its face.'" *Lucey v. Prudential Ins. Co. of Am.*, 783 F. Supp. 2d 207, 211 (D. Mass. 2011), *quoting Iqbal,* 556 U.S. 662 at 678.

### B.     Count II Must Be Dismissed Because Neither Termination of a Tenancy nor Issuance of a Notice to Quit Is "Speech."

As described above, § 3(a) of the Act forbids a landlord or landowner from doing two things during the effective period of the statute. *See* Mass. St. 2020, c. 65, § 3(a). First, a landlord or landowner may not, for purposes of a non-essential residential eviction, "terminate a tenancy." *Id.* Second, a landlord or landowner may not, for purposes of a non-essential residential eviction, "send any notice, including a notice to quit, requesting or demanding that a

tenant of a residential dwelling unit vacate the premises."[10]  *Id.*  Plaintiffs claim that these

provisions infringe improperly on their right to engage in commercial speech, in violation of the

First Amendment.  This theory is a legal nonstarter, however, for one simple reason:  neither

terminating a tenancy nor sending a notice to quit is "speech" for purposes of the First

Amendment.  Accordingly, Count II fails to state a claim upon which relief can be granted, and it

must be dismissed.

The Act is not a restraint on "speech."  It is, instead, a restraint on the legal *acts* of: (1)

terminating a tenancy, and/or (2) sending a notice to quit, including the notices to quit required

by Mass. G.L. c. 186, §§ 11[11] and/or 12,[12] which are, in most cases, prerequisites for bringing a

summary process action.[13]  This is a *conduct*-based prohibition, and "[i]t has never been deemed

---

[10]     The Act does not forbid any *oral* communications between landlords and tenants, unless circumstances exist where a lease or tenancy could be terminated without a written notice.  *Compare* Mass. St. 2020, c. 65, § 3(a)(i) (stating that during the moratorium landlords of certain tenants may not "terminate a tenancy" in non-essential cases) with § 3(a)(ii) (stating that during the moratorium that landlords of certain tenants may not "send any notice . . . requesting or demanding that a tenant of a residential dwelling unit vacate the premises).  To be clear, though, it is highly unlikely that the termination of a tenancy could be achieved by a notice that is delivered orally, and there is no doubt that: (1) a residential tenancy cannot be terminated for nonpayment without a written notice, and (2) a tenancy at will cannot be terminated without the same.  *See* Mass. G.L. c. 186, §§ 11 & 12, nn. 11 & 12, *infra*.)

[11]     "Upon the neglect or refusal to pay the rent due under a written lease, fourteen days' notice to quit, given in writing by the landlord to the tenant, shall be sufficient to determine the lease, unless the tenant, on or before the day the answer is due, in an action by the landlord to recover possession of the premises, pays or tenders to the landlord or to his attorney all rent then due, with interest and costs of suit."  Mass. G.L. c. 186, § 11.

[12]     "Estates at will may be determined by either party by three months' notice in writing for that purpose given to the other party; . . . if the rent reserved is payable at periods of less than three months, the time of such notice shall be sufficient if it is equal to the interval between the days of payment or thirty days, whichever is longer."  Mass. G.L. c. 186, § 12.

[13]     In addition to being required by statute in most residential eviction cases, *see* nn. 10-12, *supra*, a notice to quit or a notice of termination is generally required by state procedural rules as a prerequisite to filing a summary process eviction case.  Uniform Summary Process R. 2(d)(2) thus requires that, to be filed, a summary process summons and complaint must be accompanied by a "copy of any applicable notice(s) of termination of the defendant's tenancy of the premises upon which the plaintiff(s) relies where such notice is required by law and any proof of delivery of such notice upon which the plaintiff(s) plans

an abridgment of freedom of speech . . . to make a course of conduct illegal merely because the conduct was in part initiated, evidenced, or carried out by means of language." *U.S. v. Sayer*, 748 F.3d 425, 433 (1st Cir. 2014). *See generally NLRB v. Gissel Packing Co.*, 395 U.S. 575, 618 (1969) (employer's "threat of retaliation" is "without the protection of the First Amendment").

Last year, the Ninth Circuit found that an ordinance barring the use of online bidding platforms for illegal short-term rentals fell outside the First Amendment, ruling that "[b]ecause the conduct at issue . . . consists only of nonspeech, nonexpressive conduct, we hold that the Ordinance does not implicate the First Amendment." *HomeAway.com, Inc. v. Santa Monica*, 918 F.3d 676, 685 (9th Cir. 2019). The same result should obtain here. Just as a law barring landlords from using "rental housing bidding platforms" regulates "conduct, not speech," *Rentberry, Inc. v. Seattle*, 374 F. Supp. 3d 1056, 1063 (W.D. Wash. 2019), so too does one temporarily prohibiting landlords from terminating leases or sending written notices ordering existing tenants to vacate.

This is consistent with what have been variously called "verbal acts" or legally "operative words" being held to fall outside the First Amendment. *See King v. Fed. Bureau of Prisons*, 415 F.3d 634, 637 (7th Cir. 2005) ("an order to sell [stocks] . . . is not the kind of verbal act that the First Amendment protects"); *see also Int'l Franchise Ass'n, Inc. v. Seattle*, 803 F.3d 389, 408 (9th Cir. 2015) ("A business agreement or business dealings between a franchisor and a franchisee" does not have a "significant expressive element."); *cf. United States v. Bowles*, 751 F.3d 35, 40 (1st Cir. 2014) (hearsay also does not include "verbal acts" such as committing fraud, offering a bribe, or making a threat). As the Landlords admitted in their own principal

---

to rely at trial." In a hypothetical situation where a written notice of termination or to quit was, somehow, not legally required by either G.L. c. 186, §§ 11 & 12, or the written lease agreement between the parties, a Massachusetts landlord would be well-served, nonetheless, by sending such a written notice to ensure satisfaction of the just-quoted procedural rule.

Memorandum in Support of their Motion for Preliminary Injunction, "[a] notice to quit or to terminate a tenancy is . . . a legal notice that a lease or tenancy is being terminated. Indeed, a notice to quit is a *prerequisite* to filing a summary process action." *Memorandum of Law in Support of Plaintiffs' Motion for a Preliminary Injunction* (Dckt. 6) at p. 14 (emphasis in original); *see also* n.13, *supra*. Such legal notice does not involve any expression and therefore is a verbal act, not speech. Because the actions prohibited by § 3(a) of the Act are not "speech," a claim does not lie under the Free Speech Clause on the circumstances pleaded in the amended complaint. Accordingly, Count II must be dismissed. *See Lucey*, 783 F. Supp. 2d at 211.

### C. The Landlords' Takings Clause Claim Also Must Be Dismissed.

In connection with their Takings Clause claim, asserted in Count V of the Amended Complaint, the Landlords seek monetary relief for "just compensation" (Dckt. 58 at ¶ 86) and declaratory and injunctive relief (Dckt. 58 at pp. 24, Requests for Relief 5, 10-12). None of these claims for relief are, however, available to them under the Fifth Amendment in this Court. First, for reasons already asserted by the Commonwealth, any claim for monetary damages against the Commonwealth on a takings theory is barred by the Eleventh Amendment.[14]

Second, the Landlords' claims for declaratory and injunctive relief are also barred under the Supreme Court's recent decision in *Knick v. Township of Scott, Pa.*, 139 S. Ct. 2162, 2176 (2019). In *Knick*, the Supreme Court reviewed historical precedent on the issuance of injunctive relief in takings cases, explaining that injunctions were once available as a response to takings at a time when the government did not provide compensation for them. *Id.* at 2175-76. "Today,"

---

[14]  *See* Memo. In Support of MTD at 6-7; *Kentucky v. Graham*, 473 U.S. 159, 169 (1985) ("[T]he Eleventh Amendment bars a damages action against a State in federal court," and this "bar remains in effect" regardless of whether "State officials are sued for damages in their official capacity."). This bar specifically applies to Takings Clause claims. *Williams v. Utah Dept. of Corrections*, 928 F.3d 1209, 1214 (10th Cir. 2019); *Bay Point Prop., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 457 (5th Cir. 2019).

however, "because the federal and nearly all state governments provide just compensation remedies to property owners who have suffered a taking, equitable relief is generally unavailable." *Id.* at 2176. Massachusetts provides for just such relief under Mass. Gen. Laws c. 79. And, "[a]s long as an adequate provision for obtaining just compensation exists, there is no basis to enjoin the government's action effecting a taking."[15] *Knick* at 2175-76; *see also Maine Educ. Ass'n v. Cioppa*, 695 F.3d 145, 152 n.3 (1st Cir. 2012) ("ordinarily, injunctive relief is not available under the Takings Clause").

Other District Courts recently considering Takings Clause claims arising from pandemic-related regulations have reached precisely this result. *See Xponential Fitness v. Arizona*, No. CV-20-01310-PHX-DJH, 2020 WL 3971908, at *9 (D. Ariz. July 14, 2020) (citing *Knick* and stating, "Plaintiffs' Fifth Amendment takings claim cannot support their request for injunction relief.") (citing *Knick*); *Willowbrook Apartment Assocs., LLC v. Mayor & City Council of Baltimore*, No. CV SAG-20-1818, 2020 WL 3639991, at *3 (D. Md. July 6, 2020) (relying on *Knick* and stating, "[A]s multiple courts have explained, the proper remedy for a Takings violation is not injunctive relief, but rather monetary damages."); *Talleywhacker, Inc. v. Cooper*, No. 5:20-CV-218-FL, 2020 WL 3051207, at *12 (E.D.N.C. June 8, 2020). Accordingly, Plaintiffs are not entitled to a preliminary or permanent injunction on their takings claim.

---

[15] *See Lopes v. City of Peabody*, 430 Mass. 305, 312 (1999) ("We conclude that G.L. c. 79, §§ 12 and 35A, apply to temporary regulatory takings . . . ."); *Cayon v. City of Chicopee*, 360 Mass. 606, 609 (1971) ("It is well settled that a taking of private property for which compensation must be paid is not necessarily restricted to an actual physical taking of the property."). The Landlords' claim that Mass. G.L. c. 79 does *not* provide an avenue for seeking money relief in the instant circumstances, *see Plaintiffs' Reply in Support of Plaintiffs' Motion for Preliminary Injunction* (Dckt. 57) at pp.16-19, is refuted in *Defendants' Surreply in Support of Their Opposition to Plaintiffs Motion for Preliminary Injunction*, filed herewith at pp. 17-20; the argument set forth there is incorporated herein.

Although the Supreme Court's opinion in *Knick* refers to the notions that both "equitable relief," *Knick*, 139 S. Ct. at 2176, and "injunctive relief," *id.* at 2179, are generally unavailable in takings cases, it does not specifically mention "declaratory relief." But, to the extent declaratory relief can be distinguished from "equitable relief" or "injunctive relief" as a general matter, no such distinction is available here.[16] As explained by a District Court judge in another jurisdiction in a recent pandemic-related Takings Clause case, "Here, the declaratory relief sought by Plaintiffs—that the Governor's business shutdown orders effectuated an unconstitutional taking—would be the functional equivalent of injunctive relief. The Supreme Court's decision in *Knick* forecloses such relief. Again, Plaintiffs may have a remedy for the takings that they allege, but declaratory relief is not the appropriate avenue to pursue it." *County of Butler v. Wolf*, 2:20-cv-677, 2020 WL 2769105 at *4 (W.D. Pa. May 28, 2020). (A copy of *County of Butler* is attached as *Exhibit C* to *Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction* (Dckt. 30).)[17] As a result, Plaintiffs' claim for declaratory relief is barred as well.

---

[16]     And to the extent that declaratory relief were deemed to be meaningfully different from injunctive relief here, it would nonetheless be barred by the Eleventh Amendment. The Supreme Court has held that where there is "no occasion to issue an injunction," and the only effect of a declaratory judgment by a federal court would be as *res judicata* to be used by the plaintiff in a state-court action to obtain monetary relief against the state there, declaratory relief is improper because it would function as an improper "end run" around the Eleventh Amendment. *Green v. Mansour*, 474 U.S. 64, 73 (1985); *accord Mills v. Maine*, 118 F.3d 37, 54-55 (1st Cir. 1997). So too here: the only conceivable function of a declaration by this Court that the Act effects a Taking in violation of the Fifth Amendment would be as *res judicata* for plaintiffs to use against the Commonwealth in State court, potentially to obtain money damages there. In sum, to the extent that Plaintiffs seek a declaratory judgment that the Act is an unconstitutional taking and thus void and unenforceable, this would be the functional equivalent of an injunction and, thus, unavailable under *Knick*. To the extent that Plaintiffs seek a declaratory judgment that the Act is an unconstitutional taking for purposes of seeking monetary compensation in State court, such a judgment would be barred by the Eleventh Amendment, under *Mansour*.

[17]     In this particular instance, given the Eleventh Amendment, Plaintiffs' only possible recourse on a "takings" theory is in State court. *See Williams v. Utah Dept. of Corrections*, 928 F.3d 1209, 1214 (10th Cir. 2019); *Bay Point Prop., Inc. v. Miss. Transp. Comm'n*, 937 F.3d 454, 457 (5th Cir. 2019).

The Landlords rely on *City of Baton Rouge/Par of E. Baton Rouge v. Ourso*, No. CV 19-00457-BAJ-RLB, 2020 WL 3036546 (M.D. La. June 5, 2020), (*see Plaintiffs' Reply in Support of Plaintiffs' Motion for Preliminary Injunction* (Dckt. 57) at pp.19-20), but that case has nothing to do with any government regulation (whether related to COVID-19 or otherwise), and it is readily distinguishable from the situation now at bar.  In *Baton Rouge*, the City of Baton Rouge and the Parish of East Baton Rouge (collectively "Baton Rouge") brought a suit against the Parish of Iberville, its President, and its hired engineer (collectively "Iberville")[18] in anticipation of a tropical storm.  Baton Rouge sought to temporarily restrain Iberville from "deploying aqua dams, [which are] inflatable barriers designed to contain floodwaters," on the theory that the aqua dams would cause flooding in Baton Rouge (though they might simultaneously protect Iberville).  *Baton Rouge*, 2020 WL 3036546 at **1, 2.  The following sequence of events then ensued: the court granted Baton Rouge's requested interlocutory relief; that interim order expired; Iberville moved to dismiss; and a second tropical storm threatened both Baton Rouge and Iberville.  *Id.*  When Baton Rouge brought a motion for another injunction, Iberville claimed that if the aqua dams did cause flooding in Baton Rouge, the harm caused would be compensable as a taking by monetary damages awarded after-the-fact, and, thus, no injunction was available under *Knick*.  *Id.* at *2.  Ruling for *Iberville*, the judge readily distinguished *Knick*, explaining, "Unlike [in] the *Knick* case . . . Plaintiffs here allege an imminent risk of damage and loss of life."  *Id.* at *2.  Moreover, the Court wrote, "Without the benefit of full information on the effects of the aqua dams, including completed hydrological studies, the Court cannot permit

---

[18]     The decision does not explain who all the parties are.  But Internet searches reveal that J. Mitchell Ourso, Jr. is the President of Iberville Parish and that Thomas David is an engineer who was hired by Iberville Parish at the relevant time.  *See* http://ibervilleparish.com/departments/officeofthepresident; and https://www.wbrz.com/news/iberville-parish-president-ready-to-go-to-war-with-ebr-about-flooding-concerns/.

Defendants to erect barriers that would alter the natural flow of water to the potential great detriment of Plaintiffs merely because compensation may be available to them.  Simply put, the stakes are higher in this matter."  *Id.*  The *Baton Rouge* case has no applicability here, where because of the pandemic it is the *granting* of a preliminary injunction, rather than the *refusal* to grant one, that would create "imminent risk of . . . loss of life."  *See Defendants' Opposition to Plaintiffs' Motion for Preliminary Injunction* (Dckt. 30) pp. 1-6, 9-10; *see also Defendants' Surreply in Support of Their Opposition to Plaintiffs Motion for Preliminary Injunction*, filed herewith, at pp. 1-9.  Accordingly, there is no basis for Plaintiffs' claim that they are entitled to Takings Clause injunctive relief, whether in the form of a declaration or otherwise.

### III.    CONCLUSION

For all of the reasons set forth herein, Counts II and V of the amended complaint must be dismissed with prejudice forthwith.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

/s/ Jennifer E. Greaney
Jennifer E. Greaney (BBO No. 643337)
*Assistant Attorney General*
Pierce O. Cray (BBO No. 104630)
*Senior Appellate Counsel*
Richard S. Weitzel (BBO No. 630303)
*Assistant Attorney General*
Government Bureau
One Ashburton Place
DATED:  August 18, 2020              Boston, MA 02108
(617) 963-2981
Jennifer.Greaney@mass.gov
Pierce.Cray@mass.gov
Richard.Weitzel@mass.gov

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Jennifer E. Greaney*
Jennifer E. Greaney
Assistant Attorney General

DATED:  August 18, 2020