UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| MARIE BAPTISTE and MITCHELL MATORIN, and JONATHAN DAPONTE,<br><br>Plaintiffs,<br><br>v.<br><br>MIKE KENNEALY, in his official capacity as Secretary of the Executive Office of Housing and Economic Development, and CHARLES BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,<br><br>Defendants. | C.A. No. 1:20-CV-11335-MLW |

**MOTION FOR LEAVE TO FILE BRIEF OF PROPOSED AMICI CURIAE BOSTON MEDICAL CENTER, THE CHILDREN'S HOSPITAL CORPORATION, HEALTH CARE FOR ALL, HEALTH LAW ADVOCATES, THE PUBLIC HEALTH LAW WATCH, AND UMASS MEMORIAL HEALTH CARE, INC., IN OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

I.  INTRODUCTION

Proposed *Amici Curiae* the Boston Medical Center; Children's Hospital Corporation, doing business as Boston Children's Hospital; Health Care For All; Health Law Advocates; the Public Health Law Watch; and UMass Memorial Health Care, Inc. (collectively, "*Amici*") respectfully request leave to file, as *amici curiae*, the brief attached hereto as Exhibit 1.[1]

*Amici* are leading organizations working to improve population health in Massachusetts and have a substantial interest in safeguarding medically vulnerable Massachusetts residents and the Massachusetts health care delivery system during the most significant threat to public health

---

[1] The Commonwealth will not oppose this motion. As of this filing, Plaintiffs have not decided whether they intend to oppose the motion.

in the last 100 years. Separate from the arguments advanced by the Commonwealth, *Amici* contend that the state's police powers are appropriately used to safeguard population health, including to conserve scarce medical resources during the crisis and to protect the health of those portions of the population particularly at risk during this present health emergency.

II. STATEMENTS OF INTEREST

Boston Medical Center Corporation (BMC) is a private, not-for-profit 514–bed academic medical center located in Boston's South End. BMC provides a comprehensive range of inpatient, clinical, and diagnostic services in more than 70 medical specialties and is the primary teaching affiliate for Boston University School of Medicine. BMC is the largest safety-net hospital and busiest trauma and emergency services center in New England. More than half of BMC's patients come from underserved populations, such as the low-income and elderly, who rely on government payers such as Medicaid, the Health Safety Net, and Medicare for their coverage. Many of BMC's patients have different – and unequal – access to safe housing, education, income, health care, fresh food, and other needs that influence their health outcomes. BMC is vested in working with its patients and their families who struggle to maintain stable housing and works with the Boston Housing Authority, Boston Public Schools, MetroHousing Boston, and Family Aid Boston to decrease housing instability. BMC has a direct interest in limiting the displacement of people from housing during the current pandemic because loss of housing sharply increases a person's susceptibility for contracting COVID and the complications that occur when patients have chronic conditions.

The Children's Hospital Corporation, which does business as Boston Children's Hospital ("Boston Children's Hospital"), is one of the largest non-profit pediatric medical centers in the United States. Boston Children's Hospital has more than 40 clinical departments and 258 specialized clinical programs and is dedicated to improving and advancing the health and well-

being of children around the world. Boston Children's Hospital treats more children with rare diseases and complex conditions than any other hospital. Many of these children present with multiple chronic conditions that can only be addressed through comprehensive care regimens including inpatient, outpatient, in-home therapies, and medication management. Often, the families and guardians of patients with these complex conditions struggle to manage both the demanding care routines for these patients and their other personal commitments. For these families and guardians, the loss of stable housing would be particularly disruptive, and would likely lead to increased challenges regarding adherence to the prescribed medical regimen, potentially including missed office visits, decreased medication adherence, and poorer health outcomes overall. Boston Children's Hospital has a direct interest in this action and in ensuring that its patients are protected from the significant foreseeable and avoidable health impacts related to increased evictions and housing insecurity.

Health Law Advocates (HLA) is a Massachusetts-based public interest law firm helping individuals facing economic insecurity overcome barriers to accessing health care. Founded in 1995, HLA provides no-cost legal services to individuals having difficulty accessing health care, particularly those who are most likely to encounter barriers to health care coverage or services due to their income level, race, gender, disability, age, immigration status, or geographic location. HLA was counsel of record in the leading Massachusetts case on immigrant access to state health benefits, <u>Finch</u> v. <u>Commonwealth Health Ins. Connector Auth</u>., 459 Mass. 655 (2011) (Finch I) and 461 Mass. 232 (2012) (Finch II), and has assisted thousands of Massachusetts health care consumers navigate a system of scarce resources in order to access the care they need. HLA also advocates for public policy reforms, working with consumers and policy makers at the state and federal levels to strengthen our health care delivery system and

infrastructure. HLA has a direct interest in preserving access to health care coverage and services for Massachusetts communities and individuals experiencing increased health care insecurity during the COVID-19 pandemic.

Health Care For All (HCFA) is a non-profit consumer health advocacy organization that advocates for health justice in Massachusetts by promoting health equity and ensuring coverage and access for all. HCFA advocates for policies and practices to advance access to quality, affordable health coverage and care for consumers in Massachusetts, including for immigrants and communities of color. HCFA operates a toll-free HelpLine that assists Massachusetts residents in English, Spanish, and Portuguese to apply for, enroll in, and troubleshoot health coverage issues. The HelpLine receives 20,000 calls per year and assists many immigrants and persons of color from communities throughout the Commonwealth hardest hit by the pandemic. HCFA has a direct interest in preserving and improving access to high quality health care in Massachusetts especially during this period of heightened need.

The Public Health Law Watch (PHLW) is a project of the George Consortium, a nationwide network of over sixty public health law scholars, academics, experts, and practitioners who are dedicated to advancing public health through law. PHLW's goals are to increase visibility and understanding of public health law issues, identify ways to engage on these issues and provide legal analysis and commentary. The statements expressed in this brief do not necessarily represent the views of any individuals or institutions affiliated with PHLW.

UMass Memorial Health Care, Inc. ("UMass Memorial") is a private, non-profit, charitable health care system based in Worcester, Massachusetts. UMass Memorial is the largest health care provider in Central Massachusetts and provides more care to the poor and underserved than any other provider in Central Massachusetts. UMass Memorial is one of only

two "Essential MassHealth Hospital" systems in the state, based upon its provision of a disproportionate share of services to vulnerable populations. At the same time, UMass Memorial is an academic medical center that provides highly complex medical services unavailable elsewhere in Central New England. UMass Memorial is committed to addressing the social determinants of health and improving the environmental, financial and physical health of the diverse communities of Central Massachusetts as an Anchor Mission organization. UMass Memorial has a direct interest in avoiding significant housing instability and disruption during the current COVID public health crisis. Loss of stable housing and the potential resulting increase in homelessness and density within existing housing units will impede public health efforts to both reduce the spread of COVID and to support patients with chronic conditions who are at greatest risk for poor outcomes, including death, if they contract COVID. Further, unmanaged chronic conditions lead to additional health care utilization at a time when the pandemic threatens to strain medical capacity and available medical resources.

III. ARGUMENT

Acceptance of *amicus* briefs is "within the sound discretion of the court. . . ." Strasser v. Doorley, 432 F.2d 567, 569 (1st Cir. 1970). Courts may appoint *amicus curiae* to "assist the court 'in cases of general public interest by making suggestions to the court, by providing supplementary assistance to existing counsel, and by insuring a complete and plenary presentation of difficult issues so that the court may reach a proper decision.'" Students for Fair Admissions, Inc. v. President & Fellows of Harvard Coll., 308 F.R.D. 39, 52 (D. Mass.), aff'd, 807 F.3d 472 (1st Cir. 2015). Even without the joint consent of the parties, *amici* participation is appropriate where the *amicus* has "a special interest that justifies his having a say, or unless the court feels that existing counsel may need supplementing assistance." Massachusetts v. U.S.

Dep't of Health & Human Servs., No. CIVA 09-11156-JLT, 2010 WL 1667622, at *1 (D. Mass. Apr. 22, 2010).

      Here, the issues raised by this case are of great concern to the public and of particular interest to the *Amici* who include several of the Commonwealth's largest non-profit hospitals and leading health policy scholars and advocacy organizations. In the midst of the most consequential health crisis in a century, Plaintiffs seek to enjoin a significant emergency measure duly enacted by the state's legislature and signed into law by the governor to safeguard public health. While the Commonwealth capably argues that homelessness will increase the transmission of SARS-CoV-2, it does not discuss other significant impacts Plaintiffs' requested relief would have on the health of the public. *Amici* are uniquely qualified to provide assistance to the Court regarding the impact of rising housing insecurity on the thousands of medically vulnerable individuals in the Commonwealth, specifically the over 45 percent of the state's population managing multiple chronic illnesses on a daily basis.

      Moreover, *Amici* are uniquely qualified to speak to the need to conserve scarce health care resources during a pandemic. At the peak of Massachusetts' first wave of the coronavirus outbreak, almost 4,000 individuals across the state were hospitalized with COVID-19.[2] The rapid rise in hospitalizations threatened to exhaust the supply of available ICU beds, personal protective equipment and medical staff.[3] Throughout this first wave, the hospital *Amici* provided

---

[2] Massachusetts Department of Public Health COVID-19 Dashboard, April 22, 2020, available at https://www.mass.gov/doc/covid-19-dashboard-april-22-2020/download.

[3] Michelle Williams, With coronavirus cases on the rise, Massachusetts faces a potentially severe shortage of hospital beds, MassLive, March 27, 2020, https://www.masslive.com/coronavirus/2020/03/with-coronavirus-cases-on-the-rise-massachusetts-faces-a-potentially-severe-shortage-of-hospital-beds.html.

6

frontline medical services, while HLA, HCFA and PHLW worked to advance public health and assist health care consumers struggling to access care.

If emergency department utilization rises because individuals lose their housing and are consequently unable to effectively manage their chronic conditions, the state's health care resources will be diverted away from the response to COVID-19 and other unavoidable health emergencies. By temporarily stabilizing housing for the chronically ill at a time while the process of finding replacement housing is made all the more difficult by the pandemic, the Act[4] helps hospitals and providers conserve needed medical resources during the crisis and provides chronically ill patients facing eviction with a buffer of time to locate alternate housing that suits their complex medical needs.

As hospitals and advocacy and policy organizations, *Amici* oppose the relief requested by Plaintiffs on account of the substantial injury to public health such relief is likely to cause. Lifting the Act's temporary suspension of evictions will not only increase the transmission of SARS-CoV-2 in Massachusetts, it will also add the potential loss of stable housing to the myriad challenges already facing Massachusetts residents who are struggling to manage chronic diseases during the pandemic. This additional burden on the chronically ill will come just as the availability of emergency housing in the Commonwealth is strained by demand and social distancing regulations, and as health care providers are burdened by the need to serve those critically ill with COVID-19. Increasing levels of unmanaged chronic illness will result in further strain on the health care delivery system, diminish supplies of personal protective equipment,

---

[4] The "Act" refers to the Act of April 20, 2020, ch. 65, § 6, 2020 Mass. Acts, which is the subject of this lawsuit.

and hamper the ability of hospitals and health care providers to conserve and allocate health care resources for those with unavoidable medical emergencies.

IV. CONCLUSION

For the reasons stated above, the proposed *Amici Curiae* Boston Medical Center Corporation; the Children's Hospital Corporation, doing business as Boston Children's Hospital; Health Law Advocates; Health Care For All; the Public Health Law Watch; and UMass Memorial Health Care, Inc. respectfully request leave to file, as *amici curiae*, the brief attached hereto as Exhibit 1.

HEALTH LAW ADVOCATES

By: /s/ Justin J. Lowe
Justin J. Lowe (BBO # 624857)
1 Federal Street, Fifth Floor
Boston, MA 02110
Phone: (617) 275-2981
jlowe@hla-inc.org
*Attorneys for Proposed Amici Curiae*

Date: August 20, 2020

On the brief:

BOSTON MEDICAL CENTER CORPORATION
David Beck (BBO # 558616)
Chief Legal Counsel
One Boston Medical Center Place
Boston, MA 02118
Phone: (617) 638-7901
david.beck@bmc.org

*Attorney for Proposed Amicus Curiae Boston Medical Center Corporation*

CHILDREN'S HOSPITAL CORPORATION, d/b/a
BOSTON CHILDREN'S HOSPITAL
Benjamin O. Hoerner, Esq. (BBO # 691093)
Office of the General Counsel
Boston Children's Hospital
300 Longwood Avenue
Boston, MA 02115
Phone: (617) 355-4934
Benjamin.Hoerner@childrens.harvard.edu

*Attorney for Proposed Amicus Curiae the Children's Hospital Corporation, doing business as Boston Children's Hospital*

UMASS MEMORIAL HEALTH CARE, INC.
Katharine Eshghi (BBO # 629281)
Senior Vice President & General Counsel
UMass Memorial Health Care
One Biotech Park
365 Plantation Street
Worcester, MA 01605
Phone: (508) 334-1700
katharine.eshghi@umassmemorial.org

*Attorney for Proposed Amicus Curiae UMass Memorial Health Care, Inc.*

## Certificate of Service

       I certify that, on August 20, 2020, this document was filed through the Electronic Case Filing (ECF) system and thus copies of will be sent electronically to the registered participants identified on the Notice of Electronic Filing (NEF).

                                         /s/ Justin J. Lowe
                                         Justin J. Lowe