# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MASSACHUSETTS

MARIE BAPTISTE, MITCHELL MATORIN, and JONATHAN DAPONTE,

        Plaintiffs,

        v.

MIKE KENNEALY, in his official capacity as Secretary of the EXECUTIVE OFFICE OF HOUSING AND ECONOMIC DEVELOPMENT, and CHARLES BAKER, in his official capacity as Governor of the Commonwealth of Massachusetts,

        Defendants.

C.A. No. 1:20-CV-11335-MLW

## DEFENDANTS' SUPPLEMENTAL MEMORANDUM
## IN OPPOSITION TO MOTION FOR PRELIMINARY INJUNCTION
### (Allowed by Order of September 2, 2020)

As allowed by the Court's order at the conclusion of the September 2, 2002 hearing on

Plaintiffs' Motion for Preliminary Injunction (Dckt. 2), the Defendants Secretary of the

Commonwealth of Massachusetts's Executive Office of Housing and Economic Development

("EOHED") and Governor of Massachusetts (collectively, "Commonwealth") respectfully

submit this Supplemental Memorandum in Opposition, which addresses three issues relevant to

the Court's resolution of that Motion.

## I.    Massachusetts Law Highly Favors Severability of Regulations.

As the Court has recognized, "the severability of portions of a state . . . regulation is a

question governed by state law," even when the regulation has been challenged on federal

grounds. *Canterbury Liquors & Pantry v. Sullivan*, 999 F. Supp. 144, 147 (D. Mass. 1998)

(Sherman Act claim); *accord Nat'l Solid Wastes Mgmt. Ass'n v. Killian*, 918 F.2d 671, 679 n.8

(7th Cir. 1990) ("Whether provisions of a state . . . regulation are severable is, of course, a question of state law"); *Horizon Outdoor, LLC v. City of Indus*., 228 F.Supp.3d 1113, 1129 (C.D. Cal. 2002). Regulations are readily severable under Massachusetts law. *See, e.g., Morello v. Boston Rent Control Bd.,* 14 Mass. App. Ct. 27, 35 (1982) ("Nor do we view it as necessary to determine the validity of [§] 7(A)(2)(a) and (b) apart from [§] 7(A)(2)(c). The latter regulation is severable from those provisions, and our holding is so confined."); *Bible Speaks v. Board of App. of Lenox*, 8 Mass. App. Ct. 19, 34 (1979) ("We determine . . . that the bulk, dimensional, and parking regulations are severable from the [invalidated] balance of [§] 9.18, and from the provisions in [invalidated §] 6, and are capable of enforcement as if they were limitations applicable to all structures of a particular class").[1]

While Massachusetts law has not developed an articulated set of severability standards specifically for regulations, it has for statutes, and those statutory standards apply by analogy. *See Canterbury Liquors*, 999 F. Supp. at 147-49 (applying Massachusetts statutory severability cases to resolve question of regulations' severability). Under Massachusetts law, "there is a 'well-established judicial preference in favor of severability.'" *Peterson v. Comm'r of Rev*., 444 Mass. 128, 138 (2005) (quoting *Murphy v. Comm'r of the Dep't of Indus. Accidents*, 418 Mass. 165, 169 (1994)); *accord Schwann v. FedEx Ground Package Sys., Inc*., 813 F.3d 429, 440 (1st Cir. 2016) ("well-established judicial preference" in Massachusetts); *Comm. v. Brown*, 466 Mass. 676, 681 (2013) ("this rule emerged at common law"). The Supreme Judicial Court has

---

[1]     Similarly, the issue of a state statute's severability, even when a federal court is determining the reach of a federal constitutional ruling, "is controlled by state law." *Schwann v. FedEx Ground Package Sys., Inc*., 813 F.3d 429, 440 (1st Cir. 2016) (federal preemption case); *accord Leavitt v. Jane L.*, 518 U.S. 137, 138 (1996) (per curiam) (constitutional challenge to state abortion restrictions; "[s]everability is of course a matter of state law"); *Ackerley Commun. v. Cambridge*, 135 F.3d 210, 215 (1st Cir. 1998) (First Amendment case).

implemented this preference through "certain general principles," *Murphy*, 418 Mass. at 169,

which it has summarized:

> When a court is compelled to pass upon the constitutionality of a statute and is
> obliged to declare part of it unconstitutional, the court, as far as possible, will hold
> the remainder to be constitutional and valid, if the parts are capable of separation
> and are not so entwined that the Legislature could not have intended that the part
> otherwise valid should take effect without the invalid part.

*Id*. (quoting *Mass. Wholesalers of Malt Beverages, Inc. v. Comm.*, 414 Mass. 411, 420 (1993)).

Under this standard, a court "considers first whether the words" in the statute are

"capable of separation[,] . . . as a preliminary step before considering the Legislature's intent as

to whether the valid portion should remain." *Id*.; *accord Schwann*, 813 F.3d at 441 ("we first

look to the structure of [the statute] to determine whether [the invalidated part] is capable of

separation"); *Chambers v. RDI Logistics, Inc.*, 476 Mass. 95, 104 (2016) ("[t]he initial inquiry

. . . is whether the statute is 'capable of separation'"). A statute is capable of separation where

the severed provision "is not so connected with and dependent upon other clauses of the act as to

constitute an essential factor of the whole." *Chambers*, 476 Mass. at 104. Thus, a statute is

capable of separation when the severed provision and the remaining provisions "operate

independently of one another[.]" *Chambers*, 476 Mass. at 104 (prongs of independent contractor

statute were severable because, although conjunctive, they operated as two independent tests);

*see also Schwann*, 813 F.3d at 441 ("The separated itemization of § 148B(a)'s three factors

easily allows for the straightforward deletion of one factor without touching the others.").

Here the third sentence of 400 Code Mass. Reg. § 5.03(2)'s second paragraph (were the

Court to find it constitutionally infirm, which for all the reasons the Commonwealth has

previously argued it should not) is readily "capable of separation" from the other two sentences

of that paragraph, let alone the other two paragraphs of § 5.03(2). It is a separate sentence,

"operat[ing] independently" of the first two, *Chambers*, 476 Mass. at 104, which is what a

sentence, as a grammatical construct, is presumptively supposed to do.  And excising the third

sentence would have no effect on the readability or meaning of the rest of the text.  The initial

two sentences of the paragraph thus address contacting "regional Housing Consumer Information

Centers," while the third sentence, by its terms, addresses where to get "*additional* information

about resources."  *See* Stitely Aff. (Dckt. 30.16) at ¶¶ 10-24; 25-32.

If the first, "capable of separation" step of the Massachusetts severability standard for

statutes is satisfied, then the reviewing court "examines next the 'intent of the Legislature,'"

*Schwann*, 813 F.3d at 441, "consider[ing] whether the [invalidated] provision is so entwined with

the [broader statute] that the Legislature could not have intended the [broader statute] to take

effect without it."  *Murphy*, 418 Mass. at 170.  This second, "legislative intent" step has a very

specific standard:

> We must seek to ascertain whether the Legislature would have enacted [the]
> particular bill without the unconstitutional provision, or whether, in the absence of
> the unconstitutional provision, the Legislature would have preferred that the bill
> have no effect at all . . . .

*Peterson*, 444 Mass. at 139 (internal citations and quotation marks omitted); *accord Schwann*,

813 F.3d at 440.  For example, in *Schwann*, the First Circuit determined that the aim of the

Massachusetts independent contractor statute to protect employees from being deprived of

employee benefits by being misclassified as independent contractors would be better served by

severing the contested part of the statute rather than having no statute at all – explaining, "the

legislature's plain aim in enacting this statute favors two-thirds of this loaf over no loaf at all …"

*Schwann*, 813 F.3d at 441.

So too here, the obvious goal of § 5.03(2)'s second paragraph is to provide tenants

receiving a missed-rent notice with information about potential resources to help pay that rent,

and that goal would hardly be served by depriving tenants of not just the "additional" resources

identified in the third sentence but also the core information about contacting the "regional

Housing Consumer Information Center[s]" contained in the first two sentences.  As in *Schwann*,

the "plain aim in enacting this [regulation] favors two-thirds of this [paragraph's] loaf over no

loaf at all."  813 F.3d at 441.  The result is even more clear cut with the disclosure requirements

in the other two paragraphs of § 5.03(2), which address entirely separate topics than the second

paragraph does, and severance is required under Massachusetts severability standards.

## II.     First Circuit Precedent Demonstrates that the Petition Clause Is Not In Fact Implicated in This Case.

With regard to the appropriate standard of review to apply to Plaintiffs' claims under

Count I, the Defendants submit that, in considering "access to courts"/Petition Clause claims,

there is an important predicate issue – articulated by both the Supreme Court and the First Circuit

– that goes directly to the question whether Plaintiffs may leverage a "Right to Petition" claim

into an argument that the Act should be subject to "strict scrutiny" review; indeed, it goes

directly to whether Plaintiffs have a viable Right to Petition claim *at all*.  The predicate

consideration is grounded in the Supreme Court's admonition in *Christopher v. Harbury*, 536

U.S. 403 (2002), that "[h]owever unsettled the basis of the constitutional right of access to

courts, our cases rest on the recognition that the right is *ancillary to the underlying claim,*

*without which a plaintiff cannot have suffered injury by being shut out of court*."  *Id*. at 415

(emphasis added).  A related principle was articulated by the First Circuit, a few years before

*Harbury,* as follows: "In a nutshell, while there is a constitutional right to court access, there is

no complementary constitutional right to receive or be eligible for a particular form of relief."

*Inmates of Suffolk County Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997) (rejecting claim that

newly enacted federal statute that limited the right of potential litigants from obtaining certain

forms of prospective relief implicated their "fundamental right of access to the courts").

Cases that have followed *Harbury* and *Inmates of Suffolk County* have recognized that

these principles have special relevance when plaintiffs challenge legislative acts that limit or

modify claims or remedies that previously existed under statutory or common law. In this

Circuit, the litigation culminating in the First Circuit's decision in *Doherty v. Merck & Co., Inc.*,

892 F.3d 493 (1ˢᵗ Cir. 2018) is particularly instructive. *Doherty* involved a constitutional

challenge to a newly enacted Maine statute that limited the ability of potential plaintiffs to

"maintain a claim for relief or receive an award for damages" against manufacturers of

contraceptive devices in situations where a contraceptive user experienced an unwanted

pregnancy. *Id*. at 496. In addition to bringing a state "access to courts" claim (which was

rejected), the plaintiff in *Doherty* brought a First Amendment Right to Petition claim, essentially

arguing that the statute "unconstitutionally deprives her of a remedy" that she previously had.

*Doherty v. Merck & Co., Inc.*, 2017 WL 3668415 at *2 (D. Me. 2017). Drawing upon the cases

cited above, the District Court offered a cogent rejection of this type of "access to courts" claim,

stating,

> The Supreme Court has said that its [Petition Clause] precedents demonstrate an
> "unsettled ... basis of the constitutional right of access to courts" but, regardless of the
> basis of the right, "our cases rest on the recognition that the right is *ancillary to the*
> *underlying claim, without which a plaintiff cannot have suffered injury by being shut out*
> *of court.*" *Christopher v. Harbury*, 536 U.S. 403, 415 (2002) (emphasis added). The
> Second Circuit has interpreted this Supreme Court language to mean that "[t]he right to
> petition exists in the presence of an underlying cause of action and is not violated by a
> statute that provides a complete defense to a cause of action or curtails a category of
> causes of action." *City of New York v. Beretta U.S.A. Corp.*, 524 F.3d 384, 397 (2d Cir.
> 2008)[citing *Harbury*]. Or as the First Circuit said even before *Christopher v. Harbury*:
> "In a nutshell, while there is a constitutional right to court access, there is no
> complementary constitutional right to receive or be eligible for a particular form of
> relief." *Inmates of Suffolk Cty. Jail v. Rouse*, 129 F.3d 649, 660 (1st Cir. 1997). I follow
> that reasoning. In other words, the federal analysis is the same as for the Open Courts

provision of the Maine Constitution: there can be no constitutional claim regarding denial
of court access unless the plaintiff has a viable underlying cause of action. Since the
Maine Law Court has decided that Doherty has no underlying cause of action, her federal
constitutional right of access to courts has not been violated.

*Doherty*, 2017 WL 3668415 at \*2 (emphasis in original).  Lauding the District Court's "careful

and well-supported opinion," *Doherty*, 892 F.3d at 498, the Court of Appeals for the First Circuit

then affirmed the District Court's rejection of plaintiff's Right to Petition claim, on the very

same terms:

So, too, goes Doherty's argument that the Wrongful Birth Statute violates her First
Amendment right under the federal Constitution to "petition the Government for a
redress of grievances." U.S. Const. amend. I. While it is true that the right of
petition includes access to the courts, *see BE & KConst. Co. v. NLRB*, 536 U.S.
516, 525, 122 S.Ct. 2390, 153 L.Ed.2d 499 (2002), that right is "ancillary to the
underlying claim," *Christopher v. Harbury*, 536 U.S. 403, 415, 122 S.Ct. 2179,
153 L.Ed.2d 413 (2002). Because Doherty has no underlying claim, she has no
First Amendment right to petition the courts for redress of such a nonexistent
claim.

*Doherty*, 892 F.3d at 499.

The logic of the *Doherty* case (as well as the *Beretta* and *Inmates of Suffolk County Jail*

cases, *supra*) applies here and is fatal to Plaintiffs' Right to Petition claim.  In this case, the

Massachusetts Legislature has temporarily suspended Plaintiffs' ability to obtain eviction

remedies through Mass. Gen. Laws c. 279.  The legislature has *modified the available remedy*,

just like it did in *Doherty, Beretta*, and *Inmates of Suffolk County Jail*.  Indeed, it has done so in a

way that is far less intrusive and enduring than in *Doherty*, where the Maine legislature

eliminated a cause of action entirely and permanently.  If forever extinguishing a cause of action

does not give rise to a Petition Clause claim, then clearly the Act's temporary suspension of a

statutory remedy does not give rise to such a claim.  *Cf. Matorin v. Commonwealth of*

*Massachusetts*, 2084-cv-01334 (Mass. Super. Ct. 2020) (PI Decision, p. 17) ("If the legislature

has the constitutional power to alter or repeal' laws, it is difficult to see how Plaintiffs will

prevail on the merits on a claim that the legislature lacks the power to delay a citizen's rights to one form of relief under a law that the legislature is neither altering nor repealing.").[2]  To be sure, Plaintiffs may try to challenge the validity of the Legislature's underlying action – as they are in fact attempting to do via their Contracts Clause and Takings Clause claims – but Plaintiffs do not have the right to try to superimpose a "strict scrutiny" standard of review onto this exercise simply by relabeling their claim as one of "access to the courts".  *See Doherty*, 892 F.3d at 500 (ultimately analyzing statute in question under lower standard of review); *Inmates of Suffolk County*, 129 F.3d at 660 (same).

On a related note, it is also important to emphasize that Massachusetts Legislature has the full authority to "modify, enlarge, diminish or abolish the jurisdiction of all courts subordinate to the Supreme Judicial Court."  *Gray v. Comm'r of Rev*., 422 Mass. 666, 673 (1996).  *See also* Mass. Constit., Pt. 2, C. 1, § 1, Art. 3.  Thus, the Legislature has the power to alter the authority of the Massachusetts lower courts, including the Housing Courts and District Courts, to hear summary process actions, which it has temporarily done here.  *See Matorin*, *supra*, p. 15 ("[T]he eviction moratorium regulates not how the Housing Court decides cases, but rather when it decides cases.  Plaintiffs have cited no authority for the proposition that the legislature cannot tell the judiciary when it can adjudicate a case.").  There is no basis for the Plaintiffs' suggestion that the Legislature's exercise of its inherent powers as enumerated in the Declaration of Rights constitutes a violation of the First Amendment.

---

[2]     The Superior Court in *Matorin* properly recognized that Chapter 6, art. 6, of the Massachusetts Constitution grants to the Massachusetts Legislature the inherent power to change statutory law:  "All the laws which have heretofore been adopted, used and approved in the Province, Colony or State of Massachusetts Bay . . . shall still remain and be in full force, until altered or repealed by the legislature."

**III. A 'Notice to Quit' Is a Notice that Tells a Tenant to Quit.**

Finally, the Defendants wish to clarify that the term "notice to quit" refers to a notice that

tells a tenant in no uncertain terms that the tenant must quit the premises on a particular,

specified day. This is why it makes perfect sense that "a tenant may reasonably – but incorrectly

– believe the notice to quit to mean that he or she must move out before the deadline." *Adjartey*

*v. Central Division of Housing Court Dep't*, 481 Mass. 830, 850 (2019) (Appendix). And, this is

why the purposes of the Act are well-served by its Section 3(a)(ii).

As explained in *Adjartey*, "A standard notice to quit states that a tenant may be evicted if

he or she fails to vacate the premises within a certain period of time." *Id.* at 850.[3] In residential

non-payment cases, this language is not optional in any reasonable sense of the word. By

Massachusetts statute, a written lease can be terminated for nonpayment of rent only upon

"fourteen days' notice to quit, given in writing by the landlord to the tenant." Mass. G.L. c. 186,

§ 11.[4] Where a tenancy is not pursuant to a lease but instead is at-will, the tenancy may be

terminated for nonpayment of rent upon "fourteen days' notice to quit, given in writing by the

---

[3]    According to *Adjartey*: "[t]he sample fourteen-day notice to quit form available at
https://www.mass.gov/files/documents/2016/08/wg/notice-quit-14.pdf [https://perma.cc/X7PE-AH9S],
for example, includes the following language: 'Your rent being in arrears, you are hereby notified to quit
and deliver up in fourteen (14) days from your receipt of this notice, the above described premises now
held by you as my tenant. If you fail to so vacate, I shall employ the due course of law to evict you.'" *Id.*
at Appx., n.2.

[4]    Once a notice to quit is served for nonpayment under the statute, a lease is terminated if the tenant
does not pay the amount of the arrearage "on or before the date the answer is due" in an action for
possession (*i.e.*, a summary process action). *See* Mass. G.L. c. 186, § 11. This statute "'has its
foundation at common law that courts of equity will grant relief from forfeiture of the leasehold estate due
to the failure to pay rent if the tenant pays what is owed by the time of the [summary process] hearing.'"
*Commonwealth v. Chatham Dev. Co.*, 49 Mass. App. Ct. 525, 527–28 (2000), quoting Warshaw,
Massachusetts Landlord–Tenant Law § 3.8, at 121 (1987). The eviction (summary process) action
"'cannot be brought,' however, 'until fourteen days' notice to quit has been given. Until then, the
forfeiture is at most conditional, and may be purged and saved by the payment or tender of the rent due.'"
*Id.* at 528, quoting *Hodgkins v. Price*, 137 Mass. 13, 18, 1884 WL 10527 (1884).

landlord to the tenant," provided, however, that a tenant who has not "received a similar notice from the landlord within the twelve months next preceding the receipt of such notice" will have a grace period of "ten days after the receipt thereof" to prevent termination by curing the monetary default.  *See* Mass. G.L. c. 186, §12.

To be legally effective, a notice to quit must be "so certain that it cannot reasonably be misunderstood."  *Torrey v. Adams*, 254 Mass. 22, 26, 149 N.E. 618, 619 (1925)  Moreover, "if a particular day is named therein for the termination of the tenancy, that day must be the one corresponding to the conclusion of the tenancy, or the notice will be treated as a nullity."  *Id.*   In other words, the notice must correctly state the precise date on which the tenant is expected to vacate.  *See Oakes v. Monroe*, 62 Mass. (8 Cush.) 282, 285 (1851) (notice to quit "forthwith" held insufficient);[5] *Steward v. Harding*, 68 Mass. (2 Gray) 335, 335 (1854) (notice insufficient where it "not only fixed no day, on which the tenant was to quit, but none was indicated by general terms . . . .").

Accordingly, inherent in the term "notice to quit" as used in Section 3(a)(ii) of the Act is the expectation that the notice described will state unequivocally that the tenant should leave the premises on a date certain if the rent arrearage has not been cured.  Any suggestion by the Plaintiffs that a "notice to quit" might be drafted in such an innocuous way as to fail to communicate to the tenant an expectation that the tenant will depart from the premises is simply incorrect.  Accordingly, for all of the reasons stated in all of Defendants' other submissions, there is a "reasonable fit" between "the legislature's ends and the means chosen to accomplish those ends" insofar as the Legislature included Section 3(a)(ii) in the Moratorium Act.  *See Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 528 (2001).

---

[5]     "The expression, 'fourteen days' notice to quit,' is equivalent to a notice to quit in fourteen days. Such is the ordinary and familiar use of these words as applied to cases of tenancy."  *Oakes* at 285.

Respectfully submitted,

MAURA HEALEY
ATTORNEY GENERAL

*/s/ Richard S. Weitzel*
Jennifer E. Greaney (BBO No. 643337)
*Assistant Attorney General*
Pierce O. Cray (BBO No. 104630)
*Senior Appellate Counsel*
Richard S. Weitzel (BBO No. 630303)
*Assistant Attorney General*
Government Bureau
One Ashburton Place
Boston, MA 02108
(617) 963-2981/2022/2084
Jennifer.Greaney@mass.gov

DATED: September 3, 2020          Pierce.Cray@mass.gov
Richard.Weitzel@mass.gov

## CERTIFICATE OF SERVICE

I certify that this document, filed through the Court's ECF system will be sent electronically to registered participants as identified on the Notice of Electronic Filing (NEF).

*/s/ Richard S. Weitzel*
Richard S. Weitzel
Assistant Attorney General

Dated:  September 3, 2020