UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| MARIE BAPTISTE, MITCHELL MATORIN and JONATHAN DAPONTE<br><br>Plaintiffs,<br><br>v.<br><br>MIKE KENNEALY, IN HIS OFFICIAL CAPACITY AS SECRETARY OF THE EXECUTIVE OFFICE OF HOUSING AND ECONOMIC DEVELOPMENT, and CHARLES BAKER, in his Official Capacity as Governor of the Commonwealth of Massachusetts<br><br>Defendants. | C.A. No. 1:20-cv-11335 |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM REGARDING CDC ORDER "*TEMPORARY HALT IN RESIDENTIAL EVICTIONS TO PREVENT THE FURTHER SPREAD OF COVID-19*"**

Plaintiffs respectfully submit this Supplemental Memorandum addressing the implications for this case of the Order of the Centers for Disease Control and Prevention ("CDC") entitled *Temporary Halt in Residential Evictions to Prevent the Further Spread of COVID-19*, dated September 1, 2020 ("CDC Order"), 85 Fed. Reg. -- , Fed. Reg. Doc. No. 2020-19654 (forthcoming Sept. 4, 2020), http://federalregister.gov/d/2020-19654 (Dkt. No. 110-1). The Court raised this issue in its Order of September 2, 2020 (Dkt. 111) and ordered the parties to be prepared to discuss it. At the hearing held that day, the Court stated that the parties could

1

provide supplemental briefs limited to any "new" issues that had been raised in the Court's Orders of September 1 and September 2, 2020 and during the oral arguments on those days.[1]

## I. The CDC Order Eliminates Any Justification for the Moratorium Act.

Throughout this litigation (and in the state litigation), the Commonwealth has argued that the drastic restrictions imposed by the Moratorium Act on Plaintiffs' constitutional rights are justified because allowing evictions to proceed would pose a serious risk of massively spreading COVID-19. As Plaintiffs have argued, this fear is misplaced because, among other things, there is no linkage between serving Notices to Quit or filing summary process cases and the spread of the pandemic, because such things do not force any tenant to move out of a rental property. We will not repeat those arguments here.

The CDC Order has the immediate impact of eliminating any pretense that the Commonwealth's arguments have any merit. The CDC is tasked with protecting the national health from pandemic disease and has far greater resources and orders of magnitude more expertise than the Massachusetts Legislature. The CDC's Order does talk about many of the same concerns that the Commonwealth has raised, in terms of evictions leading to move-outs, potential cramped housing arrangements, and homelessness. *See* CDC Order at 16-26. However, it is apparent that the CDC has concluded based on its expertise that a moratorium on *actual removal* of tenants is sufficient to avoid the feared spread of the disease. More than that, the CDC has determined that many actual removals can go forward without having any material impact on the spread of COVID-19. Specifically, while the CDC Order does not prevent states

---

[1] The Court requested such supplemental briefs be filed by 12:00 p.m. but stated that the parties could file additional briefing this afternoon if they were unable to complete everything at once. In their first Supplemental Memorandum filed on this day (Dkt. 115), Plaintiffs addressed the implications of the CDC Order with respect to the "strict scrutiny" analysis of Claim I of the Amended Complaint concerning Plaintiffs' right of access to the courts. *See* Dkt. 115 at 15-16.

from having more restrictive provisions, in the CDC's considered view, all evictions other than those for non-payment may continue without presenting a serious threat of spreading the disease, and all non-payment evictions may also continue unless the tenant certifies under penalty of perjury that:

    1) the tenant has used best efforts to obtain all available government assistance for rent or housing;

    2) the tenant meets certain income requirements as shown by annual income (not more than $99,000 for single tax filings, and not more than $198,000 for joint filers), was not required to pay taxes in 2019, or received an Economic Impact Payment pursuant to the CARES Act;

    3) the tenant is unable to pay the full rent due to substantial loss of income;

    4) the tenant is using best efforts to pay as close to the full rent as circumstances permit; and

    5) eviction would likely render the tenant homeless or force the tenant to move into close quarters because the tenant has no other available housing options.

*See* CDC Order at 10. In other words, in the CDC's view, the only actual evictions that should be prevented in order to avoid the spread of COVID-19 are people with limited income who are having trouble paying their full rent and are prepared to document and certify under penalty of perjury that they satisfy the requirements. This makes at least some sense, given that people who are currently having trouble paying their rent are at least conceptually less likely to have the resources to obtain new housing. At the same time, there is no reason to prevent evictions of people for reasons other than non-payment, or people with incomes sufficient to allow them to locate appropriate new housing.

Accordingly, the CDC in the exercise of its extensive expertise has determined that the entirety of the Moratorium Act is completely unnecessary to accomplish the goal of slowing the spread of COVID-19. The CDC does not believe that it is necessary to bar property owners from serving Notices to Quit, from filing summary process actions, from allowing the normal summary process proceedings to continue under the Housing Court's modified socially-distant procedures, or requiring property owners to provide information to tenants about tenant-friendly organizations. The only thing that the CDC believes is needed is to bar *actual removal* of *non-paying tenants who document and certify* under penalty of perjury that they meet the requirements for protection.

In view of the CDC Order, it is clear that the Commonwealth cannot satisfy its burden under the required strict scrutiny standard of showing that the Draconian restrictions of the Moratorium Act are necessary to achieve a compelling government interest. Indeed, the CDC Order cuts the legs out from under the Commonwealth's justifications even if the Court were to (wrongly, in Plaintiffs' view) apply only an intermediate or rational basis review to one or more of Plaintiffs' claims.

Accordingly, Plaintiffs submit that the CDC Order strongly supports striking down the Moratorium Act in its entirety.

## II. **The CDC Order Provides Assurance That the Commonwealth's Parade of Horribles And Eviction "Tsunami" Will Not Materialize and That Striking Down the Moratorium Act Will Not Lead to the Spread of COVID-19.**

The CDC Order provides that it does not apply where a state currently provides protections that are at least as restrictive than the CDC Order provides. *See* CDC Order at 15-16. Thus, as long as the Moratorium Act is in effect in Massachusetts, the CDC Order does not preempt it. However, if Governor Baker were to allow the moratorium to expire in October, then

the CDC Order would presumably spring into effect and provide its more limited restrictions on evictions through its end date of December 31, 2020.

Similarly, if the Court were to strike down the Moratorium Act as Plaintiffs firmly believe it should, the Court may be assured that the parade of horribles that the Commonwealth has presented simply will not occur.[2] Specifically, there will be no massive "tsunami" of evictions, and there will be no spike in homelessness, people with limited resources will be fully-protected if they are able to demonstrate that they are entitled to the protections of the CDC Order, and there will be no significant additional spread of COVID-19—the CDC has shown that it has no such concerns provided that the restrictions it has laid out are in place.

Moreover, the Court may be assured that if it does strike down the Moratorium Act, the normal Housing Court procedures such as mediation will allow property owners to work out mutually acceptable arrangements with their tenants in many if not most cases, and that property owners and tenants will be able to negotiate resolutions in many cases without even needing to file summary process actions. This will have the salutary effects of reducing the burden on the Housing Court, of avoiding unnecessary evictions that will tarnish tenants' records, and of alleviating the economic wreckage that the ongoing moratorium has been and will continue imposing on rental property owners across the Commonwealth.

Finally, in the context of Plaintiffs' Motion for Preliminary Injunction, the CDC Order has a direct impact on the balance of harms analysis. If the Court strikes down the Moratorium Act, there will be no substantial impact on the public interest for the reasons set out above. To the contrary, striking down the Moratorium Act will immediately relieve the untenable economic

---

[2] Of course, for the reasons Plaintiffs have already explained, those horribles will not occur regardless of the CDC Order. But to the extent that the Court had any concern over that issue, the CDC Order should put them to firm rest.

harm on property owners and the harm to their fundamental constitutional rights and their rights to take possession of their property, while the "spring in" of the CDC Order in its place will ensure that the public health will not be negatively impacted and that tenants who are truly in need of assistance will be able to receive it. Indeed, the protections of the CDC Order will allow the Commonwealth and the federal government to focus their resources on providing aid to those who truly require it without the distraction of tenants who do not need the protection but are taking advantage of the moratorium. This will help conserve limited governmental financial resources because it will vastly reduce the need for direct rental assistance and rent replacement payments to property owners.

In short, to the extent that the Court is not already convinced that the parade of horribles will not occur, the CDC Order provides a sufficient backstop to the Moratorium Act so that the Court need not be concerned that holding it unconstitutional and granting the relief Plaintiffs request in full will lead to the massive spread of disease or a "tsunami" of evictions and mass homelessness. Indeed, allowing the CDC Order to come into effect in its place will provide greater certainty to both property owners and tenants than the Moratorium Act, and will remove the political imperatives to extend it yet again. The current moratorium is scheduled to—perhaps—expire in mid-October, but it is highly likely that Governor Baker will extend it again, whether for health or economic reasons, for political reasons, or even simply to avoid evictions during the holiday period. The CDC Order provides that it runs at least through December 31, 2020. The CDC Order therefore promotes economic certainty for property owners, tenants, and the government.

Whatever the analysis may have been in April 2020, circumstances had changed significantly by August. The CDC Order has now even more significantly changed the facts on

6

the ground.  The violations of Plaintiffs' fundamental constitutional rights that the Moratorium Act imposed can no longer be permitted to continue.

## **CONCLUSION**

For the foregoing reasons, as well as those set forth in Plaintiffs' prior briefing in this case and Plaintiffs' oral arguments, the Court should deny the Commonwealth's still-pending Motion to Dismiss Counts II, III, and V of the Amended Complaint.  The Court should further grant Plaintiffs' Motion for Preliminary Injunction on all Counts of the Amended Complaint and enter an order enjoining the operation of the Massachusetts Eviction Moratorium Act and declaring its unconstitutionality.

Respectfully submitted,

**MARIE BAPTISTE,
MITCHELL MATORIN, and
JOHN DAPONTE**

By their attorneys:

/s/ Richard D. Vetstein
Richard D. Vetstein
Vetstein Law Group, P.C.
945 Concord St
Framingham, MA 01702
Phone: (508) 620-5352
Fax: (888) 448-1344
Email: rvetstein@vetsteinlawgroup.com

/s/ Jordana R. Greenman
Jordana R. Greenman, Esq. (BBO# 667842)
134 Main Street
Watertown, MA 02472
Tel: (617) 379-6669
Fax: (617) 379-6669
Email: jordana@jrglegal.com

Dated: September 3, 2020

## **Certificate of Service**

I hereby certify that this document(s) filed through the ECF system will be sent electronically to the registered participants as identified on the Notice of Electronic Filing (NEF) and paper copies will be sent to those indicated as non-registered participants on September 3, 2020.

/s/ Richard D. Vetstein